# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **EIAD ODEH** | * | **CIVIL ACTION NO.: 3:14-cv-00793** |
| | * | |
| **VERSUS** | * | **JUDGE: JAMES J. BRADY** |
| | * | |
| **CITY OF BATON ROUGE/PARISH** | * | **MAGISTRATE JUDGE: RICHARD L.** |
| **OF EAST BATON ROUGE** | * | **BOURGEOIS, JR.** |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

### I.    INTRODUCTION AND FACTUAL BACKGROUND

In 2014, officials with the City of Baton Rouge/Parish of East Baton Rouge ("City-Parish") learned that an individual employed by the City-Parish attempted to sell a proprietary City-Parish software program to a third party.[1] As a result, the City-Parish initiated an investigation into the improper dissemination of its software[2] and learned that Mary E. Roper ("Roper"), the former Parish Attorney, had sent the source codes for the program to her husband, Eiad Odeh ("Plaintiff"), the Plaintiff herein, who was employed in a technical position by the City-Parish.[3] At the time, Mr. Odeh also owned his own private software company.[4] While Roper and her husband deny any involvement in the attempted unlawful sale of the software, Roper's disclosure of the software codes to her husband, together with other issues involving a lack of confidence in her service as Parish Attorney, prompted the City-Parish to place Roper on administrative leave.[5] Ultimately, the East Baton Rouge Parish Metropolitan Council ("Metro

---

[1] Exhibit 1, Deposition of Chandler Loupe, p. 25.

[2] Exhibit 1, Deposition of Chandler Loupe, p. 25.

[3] Exhibit 1, Deposition of Chandler Loupe, p. 26.

[4] Exhibit 2, Deposition of Eiad Odeh, pp. 9, 10.

[5] Exhibit 1, Deposition of Chandler Loupe, p. 67.

Council") initiated proceedings to remove Roper as the Parish-Attorney, and she was terminated from that position in September 2014.[6]

Since the initiation of her termination proceedings, Roper has filed **eight** separate lawsuits against the City-Parish, individual councilman, and the council administrator.[7] During the course of those lawsuits, it was discovered that someone was unlawfully accessing or "hacking" City-Parish attorney webmail accounts.[8] The City-Parish traced the access to an IP address that was the home address of Roper and the Plaintiff.[9] A lawful search warrant was issued,[10] and ultimately Roper, Plaintiff's wife, was issued a misdemeanor summons[11] and charged with offense against intellectual property, computer tampering and online impersonation. Shortly thereafter, Plaintiff initiated this lawsuit against the City-Parish alleging a variety of claims arising out of his employment.

In 2006, Plaintiff was employed as the Special Assistant to the Director of the City-Parish's Department of Public Works ("DPW").[12] Following an in-depth study of DPW, the City-Parish decided to reorganize the department into six different departments and eliminated the position of Director of DPW. Thus, the need for Odeh's position, Special Assistant to the Director of DPW, was eliminated.[13] In an effort to put Plaintiff in the best position for continued employment, the City-Parish suggested that Plaintiff transfer to a similar open position at City-

---

[6] Exhibit 3, Affidavit for Search Warrant and Search Warrant, *in globo*.

[7] Roper's lawsuits were each filed in the 19th JDC. Suit No. 632,669, seeking to prevent her termination, was dismissed. Suit No. 638,786 was a defamation action which was also dismissed. The remaining six lawsuits concerned public records requests submitted by Roper and were consolidated into Suit No. 634,960, and the presiding Judge issued judgment on February 4, 2016.

[8] Exhibit 3, Affidavit for Search Warrant and Search Warrant, *in globo*.

[9] Exhibit 3, Affidavit for Search Warrant and Search Warrant, *in globo*.

[10] Exhibit 3, Affidavit for Search Warrant and Search Warrant, *in globo*.

[11] Exhibit 3, Affidavit for Search Warrant and Search Warrant, *in globo*; Exhibit 2, Deposition of Eiad Odeh, p. 139.

[12] Exhibit 2, Deposition of Eiad Odeh, p. 31.

[13] Exhibit 4, Deposition of William Daniel, pp. 56, 57.

1355183.1

Parish's Emergency Management Services ("EMS"). The officials at EMS had been requesting for several years that they be assigned an employee who was technically proficient and could oversee databases and perform other IT tasks.[14] Plaintiff was qualified for that position, and therefore, was transitioned to EMS in April 2013 to assist with technical tasks.[15]

Due to budgeting considerations and the fact that Plaintiff was being paid out of DPW's budget while working for EMS, Plaintiff was required to formally apply for his position at EMS beginning in 2014.[16] Plaintiff refused to do so and requested that he be sent back to his prior position at DPW.[17] However, due to the reorganization, that position no longer existed. Plaintiff did not request that he be transferred into any other position with the City-Parish.[18] Instead, he quit his employment with the City-Parish and filed this lawsuit.

Ten months prior to his resignation, on January 7, 2014, Plaintiff was issued a written reprimand by his supervisor, Matthew Hobson, after Plaintiff unilaterally, at the request of an employee under investigation for computer fraud, blocked the employee's supervisors from accessing her computer.[19] The reprimand was issued to Plaintiff because he never sought authorization to add the security, nor did he inform his supervisor of such action.[20] Plaintiff appealed that reprimand to Mr. Hobson's supervisor, Chad Guillot, who upheld the reprimand.[21]

---

[14] Exhibit 5, Deposition of Chad Guillot, pp. 11, 12.

[15] R. Doc. 1-5, ¶10; Exhibit 5, Deposition of Chad Guillot, pp. 11, 12.

[16] Exhibit 5, Deposition of Chad Guillot, pp. 55, 56.

[17] Exhibit 5, Deposition of Chad Guillot, p. 55, 56.

[18] Exhibit 2, Deposition of Eiad Odeh, p. 47.

[19] Exhibit 6, Letter of Reprimand; Exhibit 7, Deposition of Matthew Hobson, p. 24.

[20] Exhibit 6, Letter of Reprimand; Exhibit 2, Deposition of Eiad Odeh, p. 81.

[21] Exhibit 5, Deposition of Chad Guillot, pp. 30, 41.

1355183.1

Plaintiff then appealed to the personnel board,[22] which pursuant to its authority under the Plan of Government, voted to deny Plaintiff's appeal.[23]

In July 2014, Plaintiff requested and was granted FMLA leave.[24] Without returning from that leave, he resigned his position with the City-Parish on or about October 13, 2014, coincidently within 24 hours of the alleged "hacking" incident that ultimately led to his wife's arrest.[25] Then, on December 3, 2014, shortly after Mary Roper's initial lawsuit was dismissed, Plaintiff filed his own Petition against the City-Parish. Plaintiff's Petition alleges that while employed at the City-Parish, he was subjected to harassment and discrimination on the basis of his national origin. (R. Doc. 1-5.) Plaintiff further argues that he was constructively discharged, defamed by the City-Parish, and subjected to unlawful reprisal in violation of La. R.S. 23:967.

Plaintiff's Petition asserts claims under Louisiana's Employment Discrimination Law ("LEDL"), La. R.S. 23:301, *et. seq.*, and affirmatively states that the claims are not being asserted under Title VII of the Civil Rights Act of 1965 ("Title VII"). The Petition states:

> [Plaintiff] has not yet received his Notice of Right to Sue and reserves his right, upon receipt of his Notice of Right to Sue to amend this Petition and add his claims arising under Federal law, namely, Title VII, 42 U.S.C. §2000e, *et seq*.

(R. Doc. 1-5, ¶ 7.) However, upon filing a Supplemental and Amending Petition, Plaintiff still did not assert any Title VII claims but did assert federal claims pursuant to 42 U.S.C. § 1983 in

---

[22] Exhibit 5, Deposition of Chad Guillot, p. 41.
[23] Exhibit 8, August 8, 2014, letter.
[24] Exhibit 2, Deposition of Eiad Odeh, pp. 45-47.
[25] Exhibit 2, Deposition of Eiad Odeh, pp. 86, 104.

1355183.1

connection with alleged violations of the 1st and 4th Amendments to the United States Constitution. (R. Doc. 12.)[26]

In the Supplemental and Amending Petition, Plaintiff specifically asserts claims under 42 U.S.C. § 1983 and contends that the City-Parish violated his 4th Amendment rights when it executed a search warrant at his home and seized certain of Plaintiff's electronic items and that the City-Parish violated his "right to protest unlawful race/national origin discrimination in the workplace" in violation of the 1st Amendment. (R. Doc. 12.) Plaintiff also alleges in the Supplemental and Amending Petition that he created a database for the City-Parish in 2006 (all the while being paid by the City-Parish), and because the City-Parish has allegedly not sufficiently compensated him for the use of that database, the City-Parish has misappropriated his intellectual property.

The City-Parish seeks dismissal of all of Plaintiff's claims. With respect to his discrimination and harassment claims, Plaintiff's Complaint includes a smattering of isolated instances that first occurred in 2009 and about which Plaintiff never complained or reported. Plaintiff cannot prove discrimination, as he cannot demonstrate that he was subjected to any adverse employment action or that others similarly situated to him were treated more favorably. Likewise, Plaintiff cannot prove actionable harassment, as he cannot demonstrate that the relevant events were based on a protected classification or were sufficiently severe or pervasive to constitute harassment.

To the extent that Plaintiff is asserting a claim for retaliation, he is likewise unable to meet his burden. Plaintiff cannot establish that he suffered an adverse employment action, or that

---

[26] The recitation of facts in Plaintiff's original pleading and the federal law claims set forth in Plaintiff's Supplemental and Amending Petition properly establish this Court's jurisdiction. Plaintiff did not oppose the removal of this lawsuit or seek remand.

1355183.1

there was a causal connection between any alleged protected activity and any alleged adverse action.

In addition, because the City-Parish cannot be vicariously liable for alleged violations of the 1st and 4th Amendments, and because Plaintiff cannot prove an established policy or custom by the City-Parish that promoted such violations, his claims under 42 U.S.C. § 1983 must also be dismissed.

Plaintiff's remaining state law claims are likewise fatally flawed. His whistleblower claim under La. R.S. 23:967 does not allege that he reported a violation of state law, and he can offer no evidence of reprisal. Plaintiff's claim for defamation should likewise be dismissed, as Plaintiff cannot establish the elements of a defamation claim. Moreover, Plaintiff's defamation claims against the City-Parish allegedly solely arise out of quotations that were published in newspaper articles. Notwithstanding that Plaintiff cannot rely on the pure hearsay contained in the articles to support his claims, Plaintiff cannot establish any of the elements for defamation. Finally, Plaintiff's claims for alleged misappropriation of intellectual property, including conversion, should also be dismissed, as they are prescribed. For these reasons, and as more fully set forth below, the entirety of Plaintiff's lawsuit should be dismissed with prejudice.

## II.    LAW AND ARGUMENT

Summary judgment is proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. F.R.C.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986). If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor.

6

*Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The court may not make credibility findings, weigh the evidence, or resolve factual disputes. *Id.*; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000). On summary judgment, evidence may only be considered to the extent not based on hearsay or other information excludable at trial. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

## A. Plaintiff's discrimination, harassment, and retaliation claims are brought under LEDL and not under Title VII.

Plaintiff has never specifically alleged a Title VII claim. Under the Federal Rules of Civil Procedure's requirement of notice pleading, defendants in all lawsuits must be given notice of the specific claims against them. *Anderson v. U.S. Dept. of Hous. & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008). The only reference to Title VII in Plaintiff's pleadings is a statement that Title VII claims are **not** being asserted because they are premature.[27] While that statement gave the

---

[27] See *Shabazz v. Texas Youth Comm'n*, 300 F. Supp. 2d 467, 471 (N.D. Tex. 2003):

> Because Title VII expressly refers to a party's receipt of notice of the right-to-sue, Defendants contend that by omitting this fact, the Complaint fails to allege the exhaustion of Plaintiff's administrative remedies. The Court agrees with Defendants. Even if Plaintiff were able to prove all the facts alleged in the Complaint, they do not show that Plaintiff received a right-to-sue letter from the EEOC. As a result, Plaintiff has failed to allege sufficiently that he has exhausted all administrative remedies. Accordingly, Plaintiff cannot assert a Title VII claim based on the allegations included in the Complaint.

1355183.1

City-Parish notice of potential Title VII claims and cause to remove the case, notice of the actual claims was never pled. Plaintiff's amended complaint did however plead a federal claim by asserting 42 U.S.C. § 1983 violations.

Plaintiff has asserted his claims under Louisiana's Employment Discrimination Laws ("LEDL"), and "Louisiana courts rely upon Title VII standards when addressing LEDL claims." *Griffith v. City of New Orleans*, 2013 WL 2555787, at *2 (E.D. La. June 10, 2013)[28]. "[F]or this reason litigants often restrict their briefing to Title VII law even though they are pursuing parallel state law employment claims." *Id.* See *Pierce v. State, Office of Legislative Auditor*, 07-0230 (La. App. 1 Cir. 2/8/08), 984 So. 2d 61, 69 ("Because the LEDL is similar in scope to this federal statute, Louisiana courts appropriately consider interpretations of this federal statute when interpreting our own state laws."). Accordingly, because the same standards apply, the analysis below utilizing federal law explains why the Plaintiff's claims should be dismissed. The only distinction is that LEDL and Title VII have different time limitations for actions to be considered timely. Since the LEDL allows a longer period than Title VII to assert claims, that distinction does not affect this case.

**B.    Plaintiff's claim for national origin discrimination and harassment should be dismissed.**

1.    *Most if not all of the actions forming the basis of Plaintiff's claims for national origin discrimination are time barred.*

The LEDL provides, "[a]ny cause of action provided in this Chapter shall be subject to a prescriptive period of one year." *Watson v. Clear Channel Broad., Inc.*, 2014 WL 258999, at *10 (E.D. La. Jan. 22, 2014), citing La. R.S. 23:303(D)). "[T]his one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the

---

[28] Unpublished cases are attached for the Court's convenience as Exhibit 9, *in globo*.

1355183.1

federal Equal Employment Opportunity Commission, but such suspension of the prescriptive period is limited to six months." *Id.* Accordingly, any allegations underlying Plaintiff's LEDL claims that arose more than 18 months prior to the filing of his Petition on December 3, 2014, are untimely.

"A discrete . . . discriminatory act 'occurred' on the day that it 'happened.'" *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 122 S.Ct. 2061, 2070, 153 L. Ed. 2d 106 (2002). In *Morgan*, the plaintiff argued that the time period for filing claims does not run from each discrete act, but rather runs from an "unlawful employment *practice.*" *Id.* (Emphasis added.) According to the plaintiff, "practice" means an "ongoing violation that can endure or recur over a period of time." *Id.* The US Supreme Court rejected this argument, concluding that the term "practice" applies to a "discrete act or single 'occurrence,' even when it has a connection to other acts." *Id.* at 111.

After analyzing several other Supreme Court cases, the *Morgan* court noted:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act.

*Id.* at 113. The Supreme Court denounced the lower court's theory that "so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly and sufficiently related to that act may also be considered for the purposes of liability." *Id.* at 114. Ultimately, the Court held that all acts that occurred outside of the time limitation were "untimely filed and no longer actionable." *Id.* at 115.

The same analysis is utilized when determining whether acts are untimely with respect to the deadlines set forth under the LEDL. See *Krull v. Centurytel, Inc.*, 829 F.Supp.2d 474, 478 (W.D. La. 2011) (Citing to *Morgan* to analyze the commencement of prescription under La. R.S.

1355183.1

23:303(D) and explaining that "[t]he prescription period for discrete acts begins to run on the day the act occurred" and "Louisiana's employment discrimination prohibitions parallel federal provisions.")

Here, Plaintiff's claims for discrimination and harassment are based, at least in part, on events that date back to 2009. Due to the applicable limitations period, Plaintiff is precluded from relying on most, if not all, of those instances to establish his claims for discrimination and harassment. The only allegations made by Plaintiff that are not prescribed are those that are based on events that he claims occurred after June 3, 2013 (1 year and 6 months prior to December 3, 2014). During that time period, Plaintiff alleges that:

> 1.) he was transferred to a new position within EMS and when he refused to accept that transfer, he was advised that his prior position at DPW was being abolished and that he was being placed into another position (R. Doc. 1-5, ¶¶ 15, 16.);
>
> 2.) he was issued a written reprimand (R. Doc. 1-5, ¶ 14.); and,
>
> 3.) he was constructively discharged (R. Doc. 1-5, ¶ 19.)

Therefore, Plaintiff's claim for national origin discrimination is limited to those actions.

2. _Plaintiff cannot establish a prima facie case of discrimination._

To establish a *prima facie* case of discrimination, Plaintiff must show that he (1) is a member of a protected class, (2) was subjected to an adverse employment action, (3) was qualified for his position, and (4) that others similarly situated were treated more favorably. *Jusuf v. Southwest Airlines Co.*, 2008 WL 4948615 (5th Cir. 2008), *citing*, *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005); *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503 (5th Cir. 2003), *cert. den.*, 124 S.Ct. 66, 157 L.Ed.2d 30 (2003); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394 (5th Cir. 1995), *reh'g den.*, 77 F.3d 481 (1996); *Taylor v. Principal Financial*

*Group, Inc.*, 93 F.3d 155 (5th Cir. 1996); *cert. den.*, 519 U.S. 1029, 117 S.Ct. 586 (1996). See also *Butler v. Louisiana Dept. of Health and Hospitals*, 2009 WL 2382556 (M.D. La. 2009).

In the context of a discrimination claim, "an adverse employment action consists of ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Anthony v. Donahoe*, 460 Fed.Appx. 399 (5th Cir. 2012), *citing Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (internal quotation marks and citation omitted). Where the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action. *Id.* (citing, *Serna v. City of San Antonio*, 244 F.3d 479, 485 (5th Cir. 2001)).

The Fifth Circuit utilizes a "strict interpretation of the adverse employment element of the prima facie intentional discrimination case." *Pegram*, 361 F.3d at 282. An employment action that "does not affect job duties, compensation, or benefits" is not an adverse employment action. *Id.* (quoting *Banks v. East Baton Rouge Parish School Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)). Rather, an adverse employment action consists of "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Id.* (quoting *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002).

Plaintiff was offered a transfer to a new position at the City-Parish's Emergency Management Services ("EMS") in April 2013 (R. Doc. 1-5, ¶10) because his position at DPW was being abolished due to a reorganization of DPW (into six different departments).[29] Thereafter, EMS requested that Plaintiff officially apply for that same position at EMS because

---

[29] Exhibit 2, Deposition of Eiad Odeh, pp. 45, 46. In an effort to put Plaintiff in the best position for continued employment, it was suggested that Plaintiff transfer to an open position at EMS, which had been requesting for several years that they be assigned an employee who was technically proficient and could oversee databases and perform some other IT tasks. (Exhibit 5, Deposition of Chad Guillot, pp. 11, 12.) Plaintiff was qualified for that position, and therefore, Plaintiff was transitioned to EMS to assist with technical tasks. (*Id.*)

1355183.1

he had never submitted an application, and EMS was therefore unable to pay Plaintiff out of its budget.[30] Plaintiff refused to formally apply for that position.[31]

Plaintiff's civil service level while contingently working at EMS did not change from his previous position, nor did Plaintiff suffer a reduction in pay or benefits, and he was still working in an IT position.[32] Ultimately, Plaintiff refused to formally apply for the position at EMS that he was already holding because he argued that the position would require him to perform tasks that one person was incapable of performing.[33] Plaintiff requested that he be transferred back into his position as Special Assistant to the Public Works Director.[34] Given the abolition of that position due to the reorganization of DPW,[35] a transfer back to Plaintiff's prior position at DPW was not possible.[36] Instead, Mr. Odeh resigned from the City-Parish after first taking a three month FMLA leave of absence for "stress".[37] He never returned to work after his FMLA leave. Plaintiff is unable to establish that he was subjected to an adverse employment action.

Plaintiff voluntarily quit his position with the City-Parish, and he was not constructively discharged. To the extent that Plaintiff relies on his own resignation to establish that he was subjected to an adverse employment action, that assertion likewise fails. A resignation is actionable only where that resignation amounts to constructive discharge. *Robinson v. Waste Management of Texas*, 122 Fed.Appx. 756, 758 (5th Cir. 2004). "Demonstrating constructive discharge imposes a high burden" on the plaintiff. *Id*. In order to prevail on a claim of

---

[30] Exhibit 5, Deposition of Chad Guillot, pp. 13, 14, 48, and 55. Plaintiff's position at EMS did not change. He was simply requested to formally apply for the position he was already holding. (*Id*.)

[31] Exhibit 5, Deposition of Chad Guillot, pp. 55, 56.

[32] Exhibit 2, Deposition of Eiad Odeh, pp. 43, 44.

[33] Exhibit 2, Deposition of Eiad Odeh, p. 44.

[34] Exhibit 2, Deposition of Eiad Odeh, p. 45.

[35] Exhibit 2, Deposition of David Guillory, p. 22; Exhibit 4, Deposition of William Daniel, pp. 23, 55-59.

[36] Exhibit 2, Deposition of Eiad Odeh, pp. 45-47.

[37] Exhibit 2, Deposition of Eiad Odeh, pp. 45-47.

1355183.1

constructive discharge, an employee must prove that the employer deliberately made the employee's working conditions so intolerable that a reasonable person in the employee's shoes would feel forced into an involuntary resignation. *Young v. Southwestern Sav. and Loan Ass'n.*, 509 F.2d 140 (5th Cir. 1975); *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 65 (5th Cir. 1980); *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 310 (5th Cir. 1987); *Plummer v. Marriott Corp.*, 94-2025 (La. App. 4 Cir. 4/26/95), 654 So.2d 843; *Guichard v. Super Fresh/Sav-A-Center, Inc.,* 97-1573 (La. App. 4 Cir. 2/4/98), 707 So.2d 1013.

In the constructive discharge inquiry, the court examines the working environment as a whole, and, to find for the plaintiff, must conclude that the resignation was reasonable under all the circumstances. *Robinson v. Waste Management of Texas*, 122 Fed.Appx. 756, 758 (5th Cir. 2004), citing to *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994). A plaintiff alleging that harassment compelled him to resign must present "something more" than what is required to establish a hostile work environment claim. *Penn. State Police v. Suders*, 542 U.S. 129, 140–41, 124 S.Ct. 2342 (2004). The Fifth Circuit has recognized that "part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast." *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 482 (5th Cir. 2008), citing *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 310 (5th Cir. 1987) (quoting *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987)); *Haley v. Alliance Compressor, LLC,*, 391 F.3d 644, 652 (5th Cir. 2004), (noting that a reasonable employee often should pursue less drastic options before choosing to leave her job).

Plaintiff cannot establish that the City-Parish deliberately made his working conditions so intolerable that a reasonable person in his shoes would feel forced into an involuntary

1355183.1

resignation.[38] When Plaintiff failed to return to work or formally apply for the EMS position, it was filled and satisfactorily performed by one other person.[39] Plaintiff is unable to establish that he was subjected to an adverse employment action, and his claim for national origin discrimination must fail.

With respect to the only additional alleged act that falls within the prescriptive period applicable to the LEDL, Plaintiff's claim of receiving a "baseless" written reprimand likewise does not constitute an adverse employment action. The incident involved Plaintiff adding an extra level of security on another City-Parish employee's computer, which was owned by the City.[40] The extra security prevented the city from accessing the computer to an employee believed to have committed computer fraud.[41] The written reprimand itself explains that administrative access to the employee's computer was necessary for the internal investigation, which was prevented by Odeh's actions.[42] The reprimand was issued to Plaintiff because he never sought authorization to add the security, nor did he inform his supervisor of such action.[43] Plaintiff admitted during his deposition that the reprimand occurred because he failed to inform his supervisor of the security he installed.[44] Regardless, the written reprimand does not constitute an adverse employment action, as the Fifth Circuit has stated that "we have held that a written reprimand, without evidence of consequences, does not constitute an adverse employment action." *Thibodeaux-Woody v. Houston Cmty. Coll.*, 593 Fed.Appx. 280, 286 (5th Cir. 2014) (Citing *Hernandez v. Johnson,* 514 Fed.Appx. 492, 499 (5th Cir. 2013); *DeHart v. Baker Hughes*

---

[38] See Exhibit 11, Plaintiff's letter of resignation. Plaintiff authenticated this letter in his deposition. (Exhibit 2, p. 80.)

[39] Exhibit 4, Deposition of William Daniel, pp. 59, 60.

[40] Exhibit 7, Deposition of Matthew Hobson, p. 24.

[41] Exhibit 7, Deposition of Matthew Hobson, p. 24.

[42] Exhibit 6, Letter of Reprimand.

[43] Exhibit 6, Letter of Reprimand.

[44] Exhibit 2, Deposition of Eiad Odeh, p. 81.

1355183.1

*Oilfield Operations, Inc.,* 214 Fed.Appx. 437, 442 (5th Cir. 2007)). Plaintiff does not allege that any consequences, such as a change in job, pay, or benefits, accompanied the reprimand.

Even if Plaintiff was able to establish that he was subjected to an adverse employment action, which he was not, he is unable to establish that other employees similarly situated were treated more favorably. The Fifth Circuit has characterized this standard of relevance as proof other "employees were treated differently under circumstances 'nearly identical' to [plaintiffs]." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086 (5th Cir. 1995) (emphasis added), (citing, *Little v. Republic Refining Co.*, Ltd. 924 F.2d 93, 97 (5th Cir. 1991); *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990); *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570-71 (5th Cir. 1982)). While Plaintiff may have the subjective belief that he was treated less favorably than others, he can offer no evidence that he was treated differently than any other employee under nearly identical circumstances. Therefore, his discrimination claim should be dismissed.

3.    *Plaintiff cannot prove pretext.*

As shown, Plaintiff cannot meet his burden of proving even a *prima facie* case of discrimination, i.e. that he was subjected to an adverse employment action or that he was treated differently than any other employee in nearly identical circumstances. As the City-Parish has articulated legitimate, non-discriminatory reasons for the decisions made with regard to Plaintiff's position, the burden of persuasion shifts to Plaintiff to demonstrate that the City-Parish's proffered reasons are a mere pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 795, 93 S.Ct. 1817, 1821, 36 L.Ed.2d 668 (1973). Plaintiff fulfills his burden by demonstrating that the proffered reasons were false and that discrimination was the real reason for the challenged acts. *Lawrence v. Univ. of Texas Med. Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). While the evidence required to support such an inference of discrimination varies from case to case, the evidence proffered by the plaintiff both to establish

his *prima facie* case and to rebut the employer's reasons must be "substantial"; otherwise, a jury cannot reasonably infer discriminatory intent. *Id*. at 312.

Bare allegations of discrimination alone are too speculative to create a jury question. *See*, *Swanson v. Gen. Serv. Admin.*, 110 F.3d 1180, 1886 (5th Cir. 1997), *cert. den*., 522 U.S. 948, 118 S.Ct. 366 (1997); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 405 (5th Cir. 1999). Plaintiff's proof must consist of more than "a mere refutation of the employer's legitimate nondiscriminatory reason." *Moore v. Eli Lilly & Co*., 990 F.2d 812, 815 (5th Cir. 1993). Plaintiff must "show that a reasonable factfinder could conclude that [the employer's] reason [is] unworthy of credence." *Id*., at 815-816.

As recognized by the Fifth Circuit, the question is whether an employer made a decision with discriminatory motive. *Mayberry*, 55 F.3d 1086. Plaintiff cannot refute the City-Parish's legitimate non-discriminatory reason for its actions in transferring Plaintiff to EMS and abolishing his prior position at DPW, nor can Plaintiff rebut the non-discriminatory reason that his reprimand was issued because he failed to inform his supervisor that he modified a computer, which hindered an internal investigation. Absent evidence that the proffered reasons were false and that discrimination was the real reason for the challenged acts, summary judgment should be granted as to Plaintiff's claim for discrimination under federal and state law.

4. *Plaintiff's claims for national origin harassment are time barred.*

Like his claim for discrimination, Plaintiff's claim for harassment is prescribed. In his Complaint, Plaintiff relies on two email messages he received in 2009 to support his claim for harassment.[45] Testifying in his deposition about the events that allegedly constituted discrimination and harassment, Plaintiff again cited to those 2009 email messages.[46] He also

---

[45] R. Doc. 1-5, ¶ 4.
[46] Exhibit 2, Deposition of Eiad Odeh, pp. 53, 54.

referenced his applying for and being denied a position in 2011 or 2012[47] and his being referred to as a "terrorist" in 2008 and/or 2009.[48] Mr. Odeh also described an incident that allegedly occurred on September 11, 2001, where a discrete remark was made to him by a different co-worker.[49] Plaintiff did not specify any other instances of alleged discrimination or harassment in his deposition.

With respect to a harassment claim, the *Morgan* court explained:

> The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. *Provided that an act contributing to the claim occurs within the filing period,* the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Id.* at 117. (Emphasis added.)

Importantly, prior to filing his charge with the EEOC after quitting his job, Plaintiff never complained of a single incident of harassment. Therefore, any such claims are time-barred.

5.  *Plaintiff cannot establish the essential elements of his claim for harassment.*

Each of the events that Plaintiff claims to have constituted harassment occurred more than 18 months prior to the filing of his Petition. However, to the extent that this Court construes EMS's request that Plaintiff formally apply for his position there and the abolishment of his position at DPW somehow form the basis of a claim for harassment, which the City-Parish disputes, such a claim still fails. The claim likewise fails even with the inclusion of the written reprimand.

---

[47] Exhibit 2, Deposition of Eiad Odeh, pp. 55, 56.
[48] Exhibit 2, Deposition of Eiad Odeh, p. 57.
[49] Exhibit 2, Deposition of Eiad Odeh, pp. 57, 58.

1355183.1

To state a *prima facie* case of national origin harassment alleging a hostile work environment in violation of Title VII, a plaintiff must demonstrate that: (1) he belongs to a protected group, (2) he was subjected to unwelcome harassment, (3) the harassment complained of was based on a protected classification, and (4) the harassment complained of affected a term, condition, or privilege of employment. *Celestine v. Petroleos de Venezuella SA.,* 266 F.3d 343, 353 (5th Cir. 2001).

In order for a hostile environment claim to be actionable, the conduct must be severe or pervasive. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2265, 141 (1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22, 114 S.Ct. 367, 370-71, (1993); *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, (1998). This type of claim "embodies a series of criteria that express extremely insensitive conduct against [a protected class], conduct so egregious as to alter the conditions of employment and destroy their equal opportunity in the workplace." *Paul v. Northrop Grumman Ship Systems*, 309 Fed.Appx. 825 (5th Cir. 2009), citing *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995).

There is a "high standard for judging hostility [that] is specifically intended to prevent Title VII from becoming a 'general civility code' for the workplace." *Reine v. Honeywell Intern. Inc.*, 362 Fed. Appx. 395 at 397-398 (5th Cir. 2010) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275 (1998)). Relevant factors in a harassment claim include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Harris* 510 U.S. 17, 23(1993)).

1355183.1

"[S]ubjective belief of racial [or national origin] motivation, without more, is not sufficient to show a hostile work environment." *Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 Fed.Appx. 104, 107 (5th Cir. 2009). A plaintiff's own subjective beliefs, however genuine, cannot form the basis of judicial relief. *Nichols v. Lewis Grocer*, 138 F.3d 563 (5th Cir. 1998); *Little,* 924 F.2d 93, 95.

In the instant case, Plaintiff is unable to show that the harassment he now complains of was based on a protected classification. As set forth above, the City-Parish had legitimate reasons for requesting that Plaintiff formally apply for his position at EMS, for being unable to transfer him back to his prior position at DPW, and for issuing a written reprimand to Plaintiff. There is no evidence that such actions were taken because of Plaintiff's national origin. In addition, none of the acts are sufficiently severe or pervasive to constitute harassment. Plaintiff's subjective belief that such was the case is insufficient to establish a harassment claim.

Plaintiff is unable to establish the essential elements of his claims for discrimination and harassment. Therefore, all such claims should be dismissed with prejudice.

**C.**   **Plaintiff's claim for retaliation should be dismissed.**

In his Supplemental and Amending Complaint, Plaintiff claims that the "search and ongoing criminal investigation are a result of [him] engaging in protected activities that include filing a complaint with the EEOC."[50] To establish a *prima facie* case of retaliation, Plaintiff must show that (1) he participated in a Title VII protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Stewart v. Mississippi Trans. Com'n.*, 586 F.3d 321 (5th Cir. 2009), (citing, *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473 (5th Cir. 2008)). To establish a causal

---

[50] R. Doc. 12, p. 1, ¶ I/19a.

connection, Plaintiff must demonstrate that the action would not have occurred "but for" the protected activity. *University of Texas Southwestern Medical Center v. Nassar,* 133 S.Ct. 2517 (2013). The Supreme Court has held that a plaintiff must prove that the unlawful retaliation was the "but-for" cause of the challenged employment action, not simply a "motivating factor" for the employment action. In other words, to succeed on his retaliation claim, Plaintiff must prove that he would not have suffered an adverse employment action if he had not engaged in the protected activity. "Summary judgment is appropriate if Plaintiff cannot support all three elements." *Stewart*, 586 F.3d at 331 (citing, *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757 (5th Cir. 2001)). A retaliation claim under the LEDL claim is analyzed under the same standard as a Title VII retaliation claim. See *Liles v. Burkes Outlet Stores, LLC*, 2015 WL 1975844, at *4 (W.D. La. May 1, 2015) ("Because Louisiana's anti-retaliation provision mirrors the federal version, the court will look to Title VII retaliation standards in order to analyze the sufficiency of [plaintiff's] claim.")[51]

The incident upon which Plaintiff relies to support his retaliation claim occurred in December 2014 when a search warrant was executed at Plaintiff's home.[52] Plaintiff had already resigned from the City-Parish approximately two months prior to that search. (R. Doc. 12, p. 1, ¶ I/19a.) Therefore, Plaintiff cannot establish that he suffered an adverse <u>employment</u> action, and in turn, that there was a causal connection between any alleged protected activity and the alleged adverse employment action.

---

[51] In *Martin v. Winn–Dixie Louisiana, Inc.,* 2015 WL 1281943 (M.D. La. Mar.20, 2015), the Court recognized that La. R.S. 51:2256, the Louisiana anti-retaliation statute, was only recently amended to include additional basis for retaliation claims, including national origin, effective August 1, 2014. The Court also explained that the amendment was not retroactive. As such, Plaintiff cannot rely upon any event prior to August 1, 2014 to maintain a LEDL retaliation claim based national origin.

[52] The search was actually effectuated in 2014, not 2015, as Plaintiff alleged in his Supplemental and Amending Petition. (R. Doc. 12, p. 1, ¶I/19a.)

1355183.1

Even if Plaintiff was able to establish a *prima facie* case, the burden would then shift to the employer only to articulate a legitimate, non-retaliatory reason for the adverse employment action. See *Gee v. Principi*, 289 F.3d 342 (5th Cir. 2002). Should the employer provide a permissible rationale, the plaintiff then shoulders the ultimate burden of proving that the employer's proffered rationale was pretextual and that engaging in the protected activity was the but-for cause of the adverse action. *Chaney v. New Orleans Public Facility Management, Inc.,* 179 F.3d 164, 167 (5th Cir. 1999).

Here, the search of Plaintiff's home in December 2014 and ongoing criminal investigation were based upon a sworn search warrant.[53] In the affidavit for search warrant, it was alleged that someone using an IP address associated with Plaintiff's home address unlawfully accessed City-Parish webmail accounts.[54] Since that time, Plaintiff's spouse has been criminally charged based on the findings of that search warrant.[55] Obviously, the Baton Rouge Police Department most certainly had a legitimate and non-retaliatory reason for searching Plaintiff's home. Plaintiff is unable to establish that this reason was pretextual and that engaging in the protected activity was the but-for cause of the adverse action. Plaintiff's claim for retaliation fails.

**D.      Plaintiff's claim under the First and Fourth Amendments should be dismissed.**

In his Supplemental and Amending Complaint, Plaintiff alleges that the City-Parish violated his 1st and 4th Amendment rights. (R. Doc. 12, p. 2, ¶ III/19d.) Plaintiff then asserts that the City-Parish was "at all times a person acting under color of authority" and is therefore "liable unto him pursuant to 42 U.S.C. § 1983, for which he sues herein." (R. Doc. 12, p. 2, ¶ III/19e.)

---

[53] Exhibit 3, Affidavit for Search Warrant and Search Warrant, *in globo*.

[54] *Id*.

[55] Exhibit 2, Deposition of Eiad Odeh, p. 139.

1355183.1

To the extent Plaintiff is asserting vicarious liability claims against the City-Parish for the actions of any police officer or other employee under § 1983, any such claims must be dismissed. The United States Supreme Court has stated very clearly that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009). The Fifth Circuit has also established that "[u]nder section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). Accordingly, any claims for vicarious liability against the City-Parish for the actions of any of its employees, including but not limited to any Baton Rouge Police officer, must be dismissed, with prejudice.

In order to impose independent § 1983 liability against the City-Parish, Plaintiff must prove three elements: "a policymaker, an official policy, and a violation of constitutional rights whose moving force is the policy or custom." *Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161 (5th Cir. 2010), (citing *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001)). In order to prove the second element ("an official policy"), plaintiff must demonstrate the existence of one of the following:

> 1.      A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated the policymaking authority; or
>
> 2.      A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984).

1355183.1

A review of Plaintiff's Complaints demonstrates that he has not even specifically pled that such a policy caused the alleged constitutional violation in this case. (R. Docs. 1-5 and 12.) As the Fifth Circuit Court of Appeals has clearly held, in order to establish an official capacity claim, "**each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff.**" *Piotrowski*, 237 F.3d at 579 (emphasis added).

Here, Plaintiff merely alleges that "this defendant adopted an unwritten policy to retaliate against and silence plaintiff in whistle-blowing efforts and pursuit of this lawsuit, including openly and falsely accusing plaintiff of criminal misconduct, obtaining and executing a Search Warrant, and exceeding the scope of the Search Warrant, without cause then publicly disseminating that fact to the public at large." (R. Doc. 12, p. 2, ¶ III/19d.) This does not sufficiently plead "a policy or widespread practice," as required by Supreme Court and Fifth Circuit jurisprudence. Indeed, Plaintiff points to no officially promulgated policy, adopted by the City-Parish, directing employees to retaliate or of falsely accuse citizens of criminal misconduct, obtain and execute search warrants, and exceed the scope of those search warrants.

Since he has not alleged an official policy, Plaintiff must prove, through competent evidence, that the City-Parish maintained a widespread custom of doing these things. As noted above, this custom must be so widespread among the City-Parish that, "although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Bennett*, 735 F.2d at 862. Plaintiff's only allegation in this regard states that, "as evidence of the existence of this official policy, custom, and/or ordinance . . . defendant engaged in virtually identical conduct in conjunction with the attempted termination of former BRPD Chief White as a result of the former Chief's attempt to oppose unlawful practices . . . ." (R. Doc. 12, p. 2, ¶ III/19d.) Even if Plaintiff could present

23

evidence of a similar violation involving former Chief White (which he cannot do), this still would not be enough.

To demonstrate a municipal custom under § 1983, the plaintiff must at least show a pattern of similar incidents in which citizens were injured by intentional or negligent misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the City-Parish. *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). Only if the plaintiff shows that his injury resulted from a "permanent and well settled" practice may liability attach for injury resulting from a local government custom. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 926 (1988).

As the Fifth Circuit has clearly instructed, Plaintiff must present evidence of a **pattern** of similar conduct to maintain a claim under § 1983 against the City-Parish. Where prior incidents are used to prove a pattern, they "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984). It is thus clear that a plaintiff must demonstrate "a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582 (citations omitted).

In the instant case, Plaintiff can present no evidence demonstrating that an official policy or custom (i.e., a widespread and permanent practice) existed to "to retaliate against and silence Plaintiff in whistle-blowing efforts." His allegation of a single prior incident involving Chief White is not enough to prove such a widespread practice, and he has no evidence to show that such conduct was permanent and widespread. Without such evidence, Plaintiff cannot prove the second element of his claim, "an official policy."

24

Finally, Plaintiff must also establish that the alleged policy or custom was the moving force behind the constitutional violation. In other words, Plaintiff must show direct causation. *See Piotrowski*, 237 F.3d at 580. This means "there must be a direct causal link" between the policy and the violation. *Id.* Put another way, "[t]o support a supervisory liability claim, the misconduct of a subordinate must be conclusively linked to the action or inaction of the supervisor." *Zarnow,* 614 F.3d at 169.

Plaintiff has not alleged such a pattern in his Complaints, and he cannot make such a showing with competent evidence at this stage. He cannot show that the City-Parish maintained an *official* policy or custom of negligent training or supervision that violated citizen's constitutional rights and that his decision to adopt that policy was made as a "conscious choice to endanger constitutional rights." He cannot show a pattern of conduct that caused constitutional violations similar to the ones alleged by Plaintiff in this case. Without evidence demonstrating as much, the claims for alleged violations of Plaintiff's 1st and 4th Amendments must be dismissed, with prejudice.

**E.      Plaintiff's claim under La. R.S. 23:967 should be dismissed.**

Plaintiff's claim under the Louisiana Whistleblower Statute should also be dismissed. That statute provides certain protections to employees who threaten to disclose an employer's illegal activity:

> An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the *violation of law*:
>
> (1) Discloses or threatens to disclose a workplace act or practice *that is in violation of state law*.
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into *any violation of law*.
> (3) Objects to or refuses to participate in an employment act or practice *that is in violation of law*.

1355183.1

(Emphasis added.) The Louisiana Whistleblower Statute targets serious employer conduct that violates the law. *Fondren v. Greater New Orleans Expressway Com'n*, 03-1383 (La. App. 5 Cir. 4/27/04), 871 So.2d 688, 691 (citing *Puig v. Greater New Orleans Expressway Com'n*, 00-924 (La. App. 5 Cir. 10/31/00), 772 So.2d 842, 845, *writ denied*, 00–3531 (La. 3/9/01), 786 So.2d 731). "The Whistleblower Statue provides protection to employees against reprisal from employers for reporting or refusing to participate in *illegal* work practices." *Hale* 886 So.2d at 1214.

To prevail under La. R.S. 23:967, the plaintiff must establish an actual violation of state law; a good faith belief that a violation occurred in insufficient. *Causey v. Winn-Dixie Logistics, Inc.*, 15-0813, 2015 WL 9435877 *2 (La.App. 1 Cir. 12/23/15); *Dane v. Board of Supervisors of La. State Univ.*, 2010 WL 3717242 (M.D. La. 2010); *Corley v. Louisiana ex rel. Div. of Admin., Office of Risk Management*, 816 F.Supp.2d 297, (M.D. La. 2010), *aff'd*, 2012 WL 5951550; *Accardo v. Louisiana Health Services & Indem. Co.*, 05-2377 (La. App. 1 Cir. 6/21/06), 943 So.2d 381. See also *Stevenson v. Williamson*, 547 F.Supp.2d 544 (M.D. La. 2008), *aff'd*, 324 Fed.Appx. 422 (5th Cir. 2009) ("For an employee to establish a claim under La. R.S. 23:967, she must prove that her employer committed an actual violation of state law."); *Goulas v. LaGreca*, 2013 WL 1947476 (E.D. La. 2013)[56] (plaintiff must prove that her employer committed actual violation of state law).

1. *Plaintiff did not advise the City-Parish of any violation of state law.*

Clearly, the Louisiana Whistleblower Statute anticipates some type of violation of law by the employer and subsequent action by the employee. La. R.S. 23:967. Where there is no violation of law by the employer, there can be no viable claim under section 967. In the very

---

[56] Unpublished cases are attached for the Court's convenience as Exhibit 9, *in globo*.

recent case of *Causey v. Winn-Dixie Logistics, Inc., supra,* an employee complained to his employer that equipment at work was dangerous. Thereafter, the employer did not require the employee to work with that equipment and agreed to have it repaired. The employer subsequently terminated the employee, and the employee filed suit alleging that the employer violated La. R.S. 23:967. The trial court granted the employer's exception of no cause of action, and the Louisiana appellate court affirmed, holding that the allegations did not rise to the level of reporting an actual violation of state law.

In *Hale,* 886 So.2d 1210, the employer filed a motion for summary judgment, contending that there was no violation of law as anticipated by La. R.S. 23:967. The plaintiff countered that she did not have to establish an actual violation of a law to prevail and that it was sufficient for her to make a "good faith allegation against the employer." *Id*. Recognizing that the issue was *res nova*, the Court noted:

> [T]he very specific language referring to a 'violation of law' placed not once, but in several places throughout the statute, manifests a desire by the Louisiana legislature to only provide a remedy to employees of *private* employers whose practices are in *actual* violation of law, and not simply practices disagreed with or found distasteful by the employee.

*Id*. at 1215. Thus, the Court concluded that "a violation of law must be established by a plaintiff under the Whistleblower Statute in order to prevail on the merits of the case." *Id*.

Here, Plaintiff alleges that he was constructively discharged after he advised the City-Parish of the following: (1) the Department of Public Works camera system was "failing because of sabotage, neglect, and a lack of maintenance," (2) the City-Parish was incurring monthly charges of $44,701 for phone lines and hardware circuits that did not have a corresponding physical address, and (3) the City-Parish was being billed by Verizon for 205 numbers that did not exist. (R. Doc. 1-5, ¶¶ 9-11.) Plaintiff then claims that he was:

> [S]ubjected to unlawful reprisal as a result of his oppositions,
> protests, reports of unlawful conduct in his workplace consisting of
> national origin discrimination/harassment, excessive, unwarranted,
> and unsubstantiated spending of tax payer monies on services and
> hardware not actually provided to CP nor possessed by CP, and
> disclosing that CP employees were deliberately sabotaging
> cameras . . . all in violation of La. R.S. 23:967 . . . .

(R. Doc. 1-5, ¶18.)

Plaintiff did not report any violations of state law. To the extent that Plaintiff relies on his alleged reporting of "discrimination/harassment" in the workplace to establish his whistleblower claim, that claim fails. Indeed, Plaintiff never reported any alleged acts of discrimination or harassment during his employment with the City-Parish.[57] Moreover, because Plaintiff is unable to establish that the City-Parish discriminated against him and harassed him in violation of state law, he is unable to establish an essential element of his whistleblower claim, and summary judgment is proper.

### 2. *The City-Parish did not take reprisal against Plaintiff.*

Louisiana's Whistleblower Statutes prohibits an employer from taking "reprisal" against an employee who advises an employer of a violation of law. For the purpose of La. R.S. 23:967, "reprisal" is defined as the "firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section . . . ." *Id.* at subsection (C)(1). Even if the Court assumed that the City-Parish actually violated some law, Plaintiff's claim under La. R.S. 23:967 should still be dismissed, as Plaintiff cannot establish that he was subjected to "reprisal" as a result of his actions.

Plaintiff's unsubstantiated claims in his Complaints are insufficient to establish the essential legal elements of his claim under La. R.S. 23:967. Instead, Plaintiff, who voluntarily

---

[57] Exhibit 2, Deposition of Eiad Odeh, pp. 54, 55, 58, 59.

resigned from his employment with the City-Parish (R. Doc. 12, p. 1, ¶I/19a), is required to show that the City-Parish took discriminatory action against him as a result of his protected activity. Plaintiff has no such evidence. The City-Parish had legitimate reasons for requiring Plaintiff to formally apply for his position at EMS, for the elimination of to his prior position at DPW, and for issuing him a written reprimand. Plaintiff has no evidence to the contrary.

Of further note, this Court has previously held that "any claims based on violation of Louisiana Revised Statute 23:967, Louisiana's anti-reprisal statute, are subject to the same analysis as Title VII retaliation claims." *Goring v. Board of Sup'rs of Louisiana State Univ.*, 932 F.Supp.2d 642, 655-56 (M.D. La. 2010). To establish Title VII retaliation, similar to his discrimination claim, Plaintiff must show that he suffered an adverse employment action as a result of his engaging in a protected activity. As set forth above, Plaintiff is unable to meet that burden, and therefore his claim under section 967 should be dismissed.

**F.  Plaintiff's claims for defamation should be dismissed.**

Plaintiff's Petition alleges that his claim for defamation is solely based upon newspaper articles that, according to Plaintiff, infer that he and his wife were allegedly involved in the attempted sale of proprietary City-Parish software.[58] During his deposition, Odeh confirmed that this defamation claim is only based upon alleged quotations of council members which were printed in the newspaper articles.[59] Reliance on these newspaper articles is entirely insufficient to establish a defamation claim.

It is well settled in Louisiana law that a cause of action for defamation arises out of a violation of La. Civ. Code art. 2315. *Ruffin v. Wal-Mart Stores, Inc.*, 01-0613, p. 2 (La. App. 1 Cir. 5/10/02), 818 So.2d 965, 967, writ denied, 2002-1636 (La. 9/30/02), 825 So.2d 1200. "A

---

[58] R. Doc. 1-5, ¶ 17.
[59] Exhibit 2, Deposition of Eiad Odeh, pp. 131-139.

1355183.1

defamation plaintiff must produce evidence of sufficient quality and quantity to demonstrate that he will be able to meet his burden of proof at trial." *Estiverne v. Times-Picayune, L.L.C.,* 06-0571 (La.App. 4 Cir. 12/20/06), 950 So.2d 858, 860. The following elements are essential to prevail on a claim of defamation: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; **and** (5) resulting injury. *Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390 So.2d 196, 198 (La. 1980). (Emphasis added). If any one of these required elements is lacking, Plaintiff's cause of action for defamation fails. *Starr v. Boudreaux,* 07-0652, (La. App. 1 Cir. 12/21/07), 978 So.2d 384, 389.

First and foremost, the articles, which are published by the newspaper organizations and not the City-Parish, are inadmissible hearsay. See *James v. Texas Collin* County, 535 F.3d 365, 374 (5th Cir. 2008); *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005).[60] In addition, any testimony by Plaintiff at trial regarding the content of those articles would likewise constitute hearsay. *See Barnett v. State Dept. of Health & Hospitals,* 15-0633 (La. App. 1 Cir. 11/9/15), 2015 WL 6951294, *3. Plaintiff has not identified any persons who allegedly wrote the articles as witnesses who will testify at trial.[61] Plaintiff must prove that someone on behalf of the City-Parish made defamatory comments to the newspaper organization, and simply relying on the text of the newspaper articles to stablish these alleged comments is inadequate. The newspaper articles themselves cannot establish that Plaintiff was defamed by the City-Parish.

Second, Plaintiff cannot establish that he was injured as a result of the newspaper articles. In his deposition, when asked if he had "proof that that alleged defamation [was] the cause of

---

[60] See also *State v. Harper*, 93-2682 (La. 11/30/94), 646 So.2d 338, 342. (Holding that newspaper article was inadmissible hearsay when offered as proof of the matter asserted); *Russell v. Amiss*, 386 So.2d 656, 658 (La. App. 1 Cir. 1980). ("the statement in the State-Times article that the sheriff's office was the source of the erroneous report is the rankest hearsay, and is entitled to no weight."); *Abadie v. Metro. Life Ins. Co.*, 00-344 (La. App. 5 Cir. 3/28/01), 784 So. 2d 46, 76. (Holding that newspaper article was inadmissible hearsay).

[61] Exhibit 12, Excerpts from Plaintiff's discovery responses.

1355183.1

that decline in business," Plaintiff admitted, "I don't have proof."[62] Plaintiff has offered no other evidence to show that the allegedly defamatory statements caused him any harm.

Even if the newspaper articles could serve as admissible evidence and even if Plaintiff could identify an injury resulting from the articles (which are both denied), Plaintiff cannot show that any of the quotations in the articles on behalf of persons employed by the City-Parish are defamatory or false. "Defamatory words," for purposes of a defamation action, are those words which would expose a person to contempt or ridicule, or cause a person to be shunned or avoided, and include almost any language which on its face has a tendency to injure a person's reputation." *Cortez v. Shirley*, 555 So.2d 577, 580 (La. App. 1 Cir. 1989). "An action in defamation does not lie from a statement of opinion based on the speaker or writer's subjective view and that does not state or imply underlying facts." *Brown v. Connor*, 03-282 (La. App. 5 Cir. 10/15/03), 860 So.2d 27, 30. "The test for determination of whether a state is fact or opinion is whether 'ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact.'" *Id*. Throughout this litigation, Plaintiff has not pointed to a single quotation in the newspapers about himself that could qualify as being defamatory.

Notwithstanding Plaintiff's inability to establish defamatory words, publication, falsity, or injury, Plaintiff is also unable to establish malice. "Malice (or fault), for purposes of the tort of defamation, is a lack of reasonable belief in the truth of the statement giving rise to the defamation." *Costello v. Hardy*, 03-1146 (La. 1/21/04), 864 So.2d 129, 142. "Malice in this sense is more akin to negligence with respect to the truth than to spite or improper motive." *Id.* In this case, Plaintiff is unable to show that any representative of the City-Parish lacked a

---

[62] Exhibit 2, Deposition of Eiad Odeh, pp. 97, 98.

1355183.1

reasonable belief in the truth of statements he or she allegedly made, and he is unable to show that any such persons acted negligently in making such statements. Therefore, Plaintiff is unable to establish this essential element, as well.

Plaintiff's claim of defamation lacks merit as to every single element of the cause of action. The claim must be dismissed.

## G.    Plaintiff cannot establish his claim for misappropriation of intellectual property.

Plaintiff also alleges that the City-Parish misappropriated his intellectual property:

> Defendant misappropriated and continues to misappropriate plaintiff's Intellectual Property. Mr. Odeh created a database in 2006, for which he holds the copyright. Yet, defendant continues to use plaintiff's intellectual property for traffic engineering throughout the City/Parish and without plaintiff's consent. This database maintains records for all traffic signals and signs located in East Baton Rouge Parish and is still currently used by the City/Parish. Defendant has not compensated Mr. Odeh for its use of his intellectual property, have infringed upon his copyright, and committed the tort of conversion.

(R. Doc. 12, p. 2, ¶II/19c.) The City-Parish owns the database in question, and Plaintiff developed that software in his capacity as an employee of the City-Parish. Plaintiff has no evidence to the contrary. In fact, in his deposition, when asked if he ever sent the City-Parish an invoice for that software, Plaintiff replied that he "voluntarily let them use it in 2006."[63] Even so, Plaintiff's claim for alleged copyright infringement is time-barred. The Copyright Act has a three-year statute of limitations, which accrued when Plaintiff could file suit and obtain relief, *i.e.* in 2006. 17 U.S.C. §507(b); *Makedwde Pub. Co. v. Johnson*, 37 F.3d 180 (5th Cir. 1994).

In addition, Plaintiff's claim for any compensation allegedly owed to him for this database is prescribed. Under La. C.C. art. 3494, an "action for the recovery of compensation for services rendered, including payment of . . . wages, commissions . . ." is subject to a three year

---

[63] Exhibit 2, Deposition of Eiad Odeh, p. 19.

1355183.1

prescriptive period. That period commenced when the payment became exigible and accrues as to past due payments even if there is a continuation of labor, supplies, or other services. La. C.C. art. 3495. Put differently, the period begins to run "at the point that demand for payment can be made. In cases dealing with salaries and wages, the demand for payment can be made as soon as the wages are earned and payable." *Monroe v. Physicians Behavioral Hosp., L.L.C.*, 49,248 (La. App. 2 Cir. 8/13/14), 147 So.3d 787, 794. While the City-Parish disputes that it owes any compensation to Plaintiff, to the extent it does, Plaintiff contends that such payment is owed for services he performed in 2006. The demand for any payment for such services could have been made at that time, when the wages were allegedly earned. Therefore, Plaintiff's claim for damages resulting from the use of the intellectual property he purportedly created prescribed in 2009, and Plaintiff's current claim for such amounts should be dismissed.

To the extent that Plaintiff seeks to recover for the tort of conversion, those claims are also prescribed. Delictual actions are subject to a liberative prescription of one year, which generally commences to run from the day injury or damage is sustained. La. C.C. art. 3492. For a conversion action, the prescriptive period is one year and commences "on the date the aggrieved party has actual or constructive knowledge of the facts indicating to a reasonable person that he is the victim of a tort." *Jefferson v. Crowell,* 42,177 (La. App. 2 Cir. 05/09/2007), 956 So.2d 746, 749; *see also Southern Chiropractic and Sports Rehab. Ctr., Inc. v. Coleman, D.C.,* 2007-1585 (La. App. 1 Cir. 06/30/08), 2008 WL 2582496.

In this case, Plaintiff alleges that the City-Parish committed the tort of conversion by misappropriating and continuing to misappropriate plaintiff's intellectual property. Plaintiff contends that he created that database in 2006. The City-Parish vehemently disputes that Plaintiff owns that database, but even if he did, undoubtedly, within the past ten years, Plaintiff had actual

1355183.1

or constructive knowledge that the City-Parish was (allegedly) converting the database. Because Plaintiff did not file his suit for conversion within one year of him having such knowledge, his claim for conversion is prescribed.

**H.      The City-Parish is entitled to recover attorneys' fees under La. R.S. 23:967(D).**

Plaintiff should be ordered to pay the reasonable attorneys' fees and costs incurred by the City-Parish in filing this Motion and defending the meritless whistleblower and defamation claims made by Plaintiff. Under La. R.S. 23:967(D), the employer may be entitled to reasonable attorney fees and court costs from the employee if a "suit or complaint is brought in bad faith or if it should be determined by a court that the employer's act or practice was not in violation of the law."

## III.      CONCLUSION

Between the nine lawsuits collectively filed against the City-Parish by Plaintiff and his wife, the former Parish Attorney, they have managed to allege virtually every cause of action imaginable. Plaintiff's wife's lawsuits for wrongful termination and for defamation were dismissed by two separate state courts. Plaintiff's claims here also do not arise from actionable conduct. The claims are without merit and should each be dismissed. The City-Parish respectfully requests that this Honorable Court grant this Motion for Summary Judgment and dismiss the entirety of Plaintiff's claims, with prejudice.

1355183.1

Respectfully submitted,

BREAZEALE, SACHSE & WILSON, L.L.P

*s/ Murphy J. Foster, III*
Murphy J. Foster, III,  TA, La. Bar Roll No. 5779
Jennifer D. Sims, La. Bar Roll No. 31144
Jacob E. Roussel, La. Bar Roll No. 34742
One American Place, 23rd Floor
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Phone:  (225) 387-4000
Facsimile: (225) 387-5397
*Attorneys for Defendant, City of Baton
Rouge/Parish of East Baton Rouge*

1355183.1