# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**EIAD ODEH**                                          **CIVIL ACTION**

**VERSUS**                                             **NO. 14-793-JJB-RLB**

**CITY OF BATON ROUGE/**
**PARISH OF EAST BATON ROUGE**

---

## ORDER

Before the Court is Plaintiff's Motion to Compel (R. Doc. 49) Defendant's responses to certain Interrogatories and Requests for Production.  Defendant filed an Opposition in response to the Motion. (R. Doc. 60).  For the reasons given below, Plaintiff's Motion to Compel is **GRANTED in part** and **DENIED in part**.

## I.      BACKGROUND

In his Complaint, Plaintiff claimed he was subjected to a hostile work environment, transferred to a less-desirable position and constructively discharged based on his national origin and in retaliation for opposing employment discrimination. Plaintiff additionally alleged that he was retaliated against for engaging in protected whistleblower activities in violation of Louisiana Revised Statute § 23:967. (R. Doc. 1-5).  On April 3, 2015, Plaintiff filed his Supplemental and Amending Complaint (R. Doc. 12), to add claims of "unreasonable search and seizure" in violation of the Fourth Amendment to the United States Constitution, retaliation in violation of the First Amendment, copyright infringement and conversion. (R. Doc. 12).

## II.     APPLICABLE LAW

Rule 26(b)(1) of the Federal Rules of Civil Procedure[1] allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Whether discovery is proportional depends on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  Information may fall within this scope of discovery even if it is not admissible in evidence. Fed. R. Civ. P. 26(b)(1).

## III.    DISCUSSION

As an initial matter, any outstanding discovery with respect to Plaintiff's Request for Production No. 2 was resolved in the Court's Order following the hearing on the Motion to Compel. (R. Doc. 64 at 2).  The following discovery requests remain in dispute and are addressed in turn.

### A.     Request for Production No. 4

Plaintiff's Request for Production No. 4 seeks information relating to previous complaints of discrimination made against Defendant.

**Request for Production No. 4:**
Please produce digital copies of any and all employee complaint(s) regarding harassment of any kind, discrimination of any kind, and retaliation of any kind for the past 10 years . . . .

---

[1] Rule 26(b)(1) of the Federal Rules of Civil Procedure was amended on December 1, 2015 to clarify the scope of discovery.  The 2015 amendments "restor[e] the proportionality calculation to Rule 26(b)(1)," but do not "change the existing responsibilities of the court and the parties to consider proportionality." Fed. R. Civ. P. 26(b)(1) advisory committee's note (2015).  The amendments likewise do not "place on the party seeking discovery the burden of addressing all proportionality considerations." *Id.*  "The amendments to Rule 26 govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending." *American Federation of Musicians of the U.S. and Canada v. Skodam Films, LLC*, -- F. Supp. 3d --, 2015 WL 7771078, at *5 (N.D. Tex. Dec. 3, 2015) (applying the amended version of Rule 26(b)(1) to a motion to compel filed before December 1, 2015).  Given the restorative nature of the 2015 amendments, the Court finds that applying the amendments to the instant Motion to Compel is both just and practicable.

**Response to Request for Production No. 4:**
The City-Parish objects to this Request for Production as being overly broad, unduly burdensome, and vague and as seeking matters that are not relevant to any party's claim or defense and not proportional to the needs of the case.

(R. Doc. 49-3 at 19-20).

In its Opposition, Defendant claims that the parties discussed limiting the request prior to the instant Motion, but were unable to agree.  According to Defendant, Plaintiff would not agree to limiting the Request to "certain departments, to a shorter time frame, or to just EEOC charges/lawsuits filed against the City. (R. Doc. 60 at 2).  During the hearing, Plaintiff suggested limiting the Request to complaints of discrimination based on national origin or race that were filed within Plaintiff's department over the past 10 years.  In response, Defendant objected to discovery of any complaints based on race, as the Plaintiff has only alleged discrimination based on his national origin.  Additionally, Defendant expressed concerns over the definition of 'complaint,' as well as the number departments included in the Request.

"Other claims of discrimination against an employer have been found relevant to a discrimination claim if limited to the (a) same form of discrimination, (b) the same department or agency where plaintiff worked, and (c) a reasonable time before and after the discrimination occurred." *Willis v. U.S.*, 2012 WL 5472032, at *1 n.6 (M.D. La. Nov. 9, 2012); *see also Marchese v. Secretary, Dep't of the Interior*, 2004 WL 2297465, at *2 (E.D. La. Oct. 12, 2004) (same); *Mitchell v. Nat'l Railroad Passenger Corp.*, 208 F.R.D. 455, 460 (D.D.C. 2002) (same). The relevant timeframe may range, depending on the facts of each case. However, courts have generally limited discovery of other employees' claims of discrimination to 3 to 5 years. *Gillum v. ICF Emergency Management Services, L.L.C.*, 2009 WL 2136269, at *6 n.5 (M.D. La. July 16, 2009) (limiting discovery of other claims of discrimination to "the past five (5) years") (collecting cases);

*Marchese v. Secretary, Dep't of the Interior*, 2004 WL 2297465, at *2-3 (E.D. La. Oct. 12, 2004) (3 years).

To begin, Plaintiff's Request, including his proposed limitation, is overly broad to the extent it seeks complaints filed within the past ten years. Consistent with the case law cited above, Plaintiff's Request will be limited to complaints made during the last 5 years of Plaintiff's employment.

Second, the Court rejects Defendant's argument that complaints of race discrimination are irrelevant. Plaintiff, "who is of Arab decent, . . . contends he has been discriminated against and harassed on account of his national origin . . . ." (R. Doc. 6 at 1). "[I]n the Title VII context, the terms [race and national origin] overlap as a legal matter." *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 614 (1987) (Brennan, J., concurring) (The "line between discrimination based on 'ancestry or ethnic characteristics' and discrimination based on 'place or nation of origin,' is not a bright one."); *Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. 1981) ("In some contexts, national origin discrimination is so closely related to racial discrimination as to be indistinguishable."); *Godbolt v. Hughes Tool Co.*, 63 F.R.D. 370, 374 (S.D. Tex. 1972) ("[A]s a practical matter, discrimination against 'national origin' minorities differs little, if at all, from discrimination against 'racial minorities.'"); EEOC Compliance Manual § 15-II (Aug. 2009) ("Discrimination against a person because of his or her ancestry can violate Title VII's prohibition against race discrimination." While they are not identical, "there can be considerable overlap between 'race' and 'national origin' . . . ."); EEOC Compliance Manual § 15-IV(A) (Aug. 2009) ("National origin and race often overlap because persons who themselves are, or whose ancestors were, of the same national origin frequently are of the same race."). In fact, the Supreme Court has found that discrimination based on a person's Arabic-ancestry can constitute discrimination on the

basis of race. *St. Francis College*, 481 U.S. at 613.  As such, Plaintiff is entitled to complaints of discrimination, harassment or retaliation based on race or national origin.

During his employment, particularly within the last 5 years of his employment, Plaintiff worked in two different departments—Department of Public Works and Emergency Medical Services.  As such, complaints filed by employees within both departments are relevant.

Considering the parties' arguments and the applicable law, the Court **GRANTS** Plaintiff's Motion as it pertains to Request for Production No. 4, subject to the following restrictions. Plaintiff's Request for Production No. 4 is limited to (1) complaints of any type of discriminatory or harassing conduct or retaliation based on race or national origin; (2) made by any employee of the Department of Public Works or Emergency Medical Services; (3) made between January 1, 2009 and December 31, 2014.  During the hearing, Defendant expressed concern over the definition of the term 'complaint.'  To be clear, the Court uses the term "complaint" in its broadest sense.  In other words, a complaint constitutes any allegation of discrimination or harassment, no matter how informal, including e-mails.  A complaint may be lodged internally or with the Louisiana Commission on Human Rights or the United States Equal Employment Opportunity Commission. Therefore, Plaintiff's Motion is **GRANTED** as to Request for Production No. 4. Defendant must supplement its Response to Request for Production No. 4 consistent with the Court's Order within **14 days**.

### B.      Request for Production No. 6

Request for Production No. 6 seeks a copy of Plaintiff's entire email inbox during his employment with Defendant.

**Request for Production No. 6:**
Please produce a digital copy of plaintiff's Email Inbox from 2001 to present in unrestricted and searchable 'PST' file format.

**Response to Request for Production No. 6:**
The City-Parish objects to this Request for Production as overly broad, unduly burdensome, and vague and as seeking matters that are not relevant to any party's claim or defense and not proportional to the needs of the case. Plaintiff's email inbox for his brgov.com account includes approximately 64,685 email messages. Prior to production, any such emails would have to be reviewed for privilege.

(R. Doc. 49-3 at 20). Defendant is particularly concerned that some of the emails would contain information protected by the attorney client privilege (R. Doc.60 at 3), a claim which Plaintiff rejects. (R. Doc. 49-1 at 3).  Defendant also informed the Court that emails between 2001 and 2004 would no longer even exist.

Aside from its privilege argument, Defendant additionally suggests that reviewing all 64,685 emails would be unduly burdensome considering Plaintiff has not shown how his entire email inbox from 2001 until 2014 is relevant or proportional to the needs of the case. (R. Doc. 60 at 3). Specifically, "Plaintiff did not limit the scope of this request to email messages he received from a certain person, . . . during a certain time, or  . . . that include certain search terms." (R. Doc. 60 at 4). Moreover, in responding to Plaintiff's other discovery requests, Defendant has diligently searched Plaintiff's email inbox and presumably produced any responsive emails. (R. Doc. 60 at 4).

Given Defendant's representations, the Court asked Plaintiff during the hearing to explain the relevance and need for his entire email inbox over a 13 year period.  Plaintiff responded that emails written around the time he created the software at issue and those written around the time that Defendant started using the software (roughly a two-year period) would be relevant to whether Plaintiff created the program at Defendant's instruction.  When asked whether Plaintiff had otherwise requested this type of information during discovery, he stated that he was not sure. Plaintiff also claimed that some emails might be relevant to his discrimination claim, although he did not provide any specific reasons.

Plaintiff has not shown how his entire email inbox between 2001 and 2014 is relevant and discoverable. As the Court explained during the hearing, an email inbox, in general, has little relevance. Instead, it is the information and communications contained within those emails that may be relevant. Plaintiff has not demonstrated that the existence of the inbox or any particular email is in any way relevant in this matter. If Plaintiff needs certain types of information, regardless of whether that information is found in an internal memorandum, email, letter, etc., he may specifically request the type of information sought, regardless of whether it may be found in an email inbox or stored in some other more conventional manner. As the requesting party, Plaintiff has an obligation to sufficiently describe each item or category of items he desires. Fed. R. Civ. P. 34(b)(1)(A) (a request for production should describe the sought after items with "reasonable particularity"). He has failed to do so in this request. Plaintiff's Motion to Compel is therefore **DENIED** as to Request for Production No. 6.

**C.      Request for Production No. 7**

Plaintiff's Request for Production No. 7 seeks information relating to the ownership of the database at issue in this litigation.

**Request for Production No. 7:**
Please produce a digital copy of any and all records that support your contention that you own the database . . . and/or that you own the copyright for that database . . . .

**Response to Request for Production No. 7:**
The City-Parish objects to this Request for Production as being overly broad, unduly burdensome, and vague. Subject to those objections, and without waiving same, see documents attached hereto and labeled as CITY/EBRP Docs – 00633 through 00868.

(R. Doc. 49-3 at 21).

In response to this Request, Defendant produced over 200 pages of documents, all of which relate "to Plaintiff's employment with the City-Parish" as Defendant "contends that the database was created by Plaintiff in his capacity as a City-Parish employee." (R. Doc. 60 at 6). Plaintiff,

however, suggests the response is insufficient because "None of the 236 documents reflect any

association with Traffic Engineering Database graphical user interface software." (R. Doc. 49-1 at

4).

During the hearing, the Court asked Plaintiff to explain how Defendant's response was

insufficient.  Plaintiff simply responded that he believes the documents produced by Defendant are

not responsive and would like some confirmation that Defendant is unable to produce any

documents proving its ownership of the software.  Plaintiff's dissatisfaction with Defendant's

response is without merit.  The documents produced are certainly relevant to the capacity in which

the database was created, which is, in turn, relevant to the issue of ownership.  Defendant stated

during the hearing that it has produced all of the responsive documents in its possession, custody

and control.  Therefore, Plaintiff's Motion to Compel is **DENIED** as to Request for Production No.

7.

### D.    Interrogatory No. 6

Plaintiff's Interrogatory No. 6 seeks information regarding any disciplinary actions taken

against other employees for incidents involving persons of Middle Eastern descent.

**Interrogatory No. 6:**
Please identify any or all disciplinary actions that [were] imposed on any employee by you
concerning or referencing in any way a person of Middle Eastern descent from 2006 to the present.

**Response to Interrogatory No. 6:**
The City-Parish objects to this Interrogatory as being overly broad, unduly burdensome, and vague
and as seeking matters that are not relevant to any party's claim or defense and not proportional to
the needs of the case. Subject to those objections, and without waiving same, the City-Parish states
that it does not track the national origin of its employees.

(R. Doc. 49-3 at 6).

In his Motion to Compel, Plaintiff argues that Defendant's response is insufficient because

"**We need all records for Stacy Simmons**," an employee who was apparently "demoted after the

City-Parish blamed her for not dealing with an apparent security breach at the EOC in East Baton Rouge Parish, involving a person of Middle Eastern descent." (R. Doc. 49-1 at 4).

Defendant first argues that it cannot answer as it does not track the National Origin of its employees. Otherwise, Defendant suggests the request is overly broad. Second, Defendant responds that Stacy Simmons' employment records were not specifically requested. Next, Defendant argues that the records are confidential. Finally, Defendant suggests that Stacy Simmons' records are irrelevant because "the incident that led to disciplinary action being taken against Ms. Simmons did not involve any type of national origin discrimination," but instead involved "a *religious* group." (R. Doc. 60 at 8).

First, Defendant's objection that it does not track the National Origin of its employees is misguided with respect to Interrogatory No. 6. Plaintiff is not requesting disciplinary actions taken against employees of Middle Eastern descent. Rather, he seeks information about disciplinary actions involving conduct that concerned or referenced any individual of Middle Eastern descent. Plaintiff's request is, however, overly broad to the extent it seeks information dating back to 2006 and from any departments. Typically, this Court has limited discovery in this context to information available from the department(s) in which a plaintiff worked for a period of 5 years. *See Minnis*, 2013 WL 6271940, at *8. The Court finds that to be an appropriate balance in this case as well. As such, Plaintiff's request is **limited** to information from departments in which Plaintiff worked and covering the period between **2009 and 2014** — his last five years of employment.

Second, Defendant's objection based on Plaintiff's failure to specifically request Ms. Simmons' personnel file is unfounded, as Ms. Simmons' worked in the same department as Plaintiff (EMS) during the relevant time period and her 2010 demotion is reasonably responsive to Interrogatory No. 6. Defendant suggests that this particular incident dealt with religious, as opposed

to National Origin discrimination and the Court to some extent agrees.  Nonetheless, the Court is not willing to draw as bright a line as Defendant suggests.

"The history of religious discrimination in the United States is intertwined with that based on other protected characteristics, including national origin and race." *Hassan v. City of New York*, 804 F.3d 277, 303 & n.15 (3d Cir. 2015) ("Indeed, the close relationship between race, religion, ethnicity, and national origin is reflected by the allegations" that "the Program also intentionally targets Muslims by using ethnicity as a proxy for faith."); *Unal v. Los Alamos Public Schools*, -- F. App'x -- , 2016 WL 360758, at *6 (10th Cir. 2016) (employer's comment regarding Turkish employee's Muslim faith could "reasonably" be inferred as "animus toward [employee] because of her national origin" considering "Turkey's status as a predominantly Muslim country effectively intertwines [employee's] religion and nationality."); Khaled A. Beydoun, *Between Muslim and White: The Legal Construction of Arab American Identity*, 69 N.Y.U. Ann. Surv. Am. L. 29, 33 (2013) (noting that "the conflation of Arab and Muslim identity was deeply entrenched within the courts during the Naturalization Era" and that "Islam was treated as an ethno-racial identity").

Following the hearing, the Court ordered Defendant to produce "any portions of Stacy Simmons' personnel file pertaining to the subject of any disciplinary action taken against her . . . for in-camera review." (R. Doc. 64 at 2).  Defendant submitted two disciplinary actions found in Ms. Simmons' personnel file, the second of which the Court finds discoverable. (R. Doc. 66).

On November 10, 2010, Ms. Simmons received a demotion letter for failing to "recognize the seriousness of a high level security breach and the potential risk to our public safety agencies and [for failing] to conduct a timely and accurate investigation" into an incident occurring on September 11, 2010. (R. Doc. 66 at 3).  The letter explains that "on Saturday, September 11, 2010, between 5 pm and 6 pm a group of individuals who identified themselves as Muslims were allowed

in the MOHSEP Building for the purpose of bringing food to the public safety employees working in the Emergency Communications Center." (R. Doc. 66 at 3).  Another employee apparently violated a security policy by leaving the individuals in the building unattended for "approximately 10 minutes." (R. Doc. 66 at 3-5).  Ms. Simmons failed to investigate the "situation" which resulted in her demotion. (R. Doc. 66 at 4-5); (R. Doc. 60 at 8).  While it may be the position of the Defendant that any disciplinary action taken was based on reasons completely unrelated to the national origin or race of the individuals allowed access, the Court will not make that conclusion for the purposes of limiting discovery in this context.

While the Court recognizes that every personnel file contains confidential information, this fact does not act as an absolute bar to discovery.  Instead, any confidential information found in the relevant portions of Ms. Simmons' personnel file must be redacted prior to production and can otherwise be produced subject to a protective order limiting its dissemination outside of this lawsuit. As such, Plaintiff's Motion to Compel is **GRANTED** to the extent it seeks information about disciplinary actions involving conduct that concerned or referenced any individual of Middle Eastern descent between 2009 and 2014 and Defendant must **supplement** its response within **14 days** of this Order.  Responsive information would include the portions of **Stacy Simmons' personnel file** relating to her **2010 demotion**.  To protect Ms. Simmons' interests, Plaintiff and his counsel are **ORDERED** not to **disseminate** the responsive portions of Ms. Simmons' personnel file beyond those individuals listed in **paragraph 2 of the Protective Order**. (R. Doc. 72-1 at 1).

### E.    Interrogatory No. 7

Plaintiff's Interrogatory No. 7 seeks information regarding the composition of Defendant's workplace, with respect to Middle Eastern employees.

**Interrogatory No. 7:**

Please describe and identify any or all current or previous Middle Eastern descent employees, title, job responsibilities, compensation, and benefits of each position of employment from 2006 to present.

**Response to Interrogatory No. 7:**
The City-Parish objects to this Interrogatory as being overly broad, unduly burdensome, and vague and as seeking matters that are not relevant to any party's claim or defense and not proportional to the needs of the case. Subject to those objections, and without waiving same, the City-Parish states that it does not track the national origin of its employees.

(R. Doc. 49-3 at 7).

During the hearing, Plaintiff argued that the requested information is necessary to show that individuals of Middle Eastern descent generally do not occupy management positions and are not getting the same opportunities as others. Plaintiff's Interrogatory, however, is not limited to individuals in positions of management. Instead, Plaintiff needlessly requests information regarding every single employee on Defendant's payroll over a 10 year period. This request is overly broa

Second, Defendant does not track the National Origin of its employees or whether they are of Middle Eastern descent. Therefore, the information requested by Plaintiff is unavailable and considering the scope of the request, collecting this information would be unduly burdensome. For this additional reason, Plaintiff's Motion to Compel must be denied as to this request.[2]

Therefore, for the reasons given above, Plaintiff's Motion to Compel is **DENIED** as it relates to Interrogatory No. 7.

### F.    Interrogatory No. 15

Interrogatory No. 15 concerns an alleged "intrusion" into Plaintiff's office on November 20, 2013. (R. Doc. 1-5 at 4).

---

[2] Although national origin is not available and therefore not responsive to the Interrogatory at issue, much of the information sought by Plaintiff is made available to the public through Defendant's own website and thus could have been provided upon request. In particular, Defendant's website contains charts documenting the name, time of employment, position, department, hourly rate of pay, salary, sex and race for all current and former City-Parish employees found in Defendant's online database (22,985 employees). Available at https://data.brla.gov/Government/City-Parish-Employees/gyhq-w3h3.

**Interrogatory No. 15:**
Explain in detail the reason for the intrusion into Plaintiff['s] office, on November 20, 2014, and identify any documents relating to this incident.

**Response to Interrogatory No. 15:**
The City-Parish objects to this Interrogatory as being vague. The City-Parish further objects to this Interrogatory inasmuch as it seeks response to an interrogatory in excess of the twenty-five interrogatory (including discrete parts) limit set forth in F.R.C.P. 33(a)(1). Subject to these objections, and without waiving sale, the City-Parish states that it has no reason to believe that there was an 'intrusion' into Plaintiff's office on November 20, 2014. On November 20, 2014, Plaintiff was no longer employed by the City-Parish because he had resigned prior to that time.

(R. Doc. 49-3 at 12).

During the Rule 37 conference, Plaintiff clarified that he sought information relating to an 'intrusion' occurring on November 20, 2013. (R. Doc. 49-1 at 4); (R. Doc. 60 at 9).  Following this clarification, Defendant's response did not change as it "disagreed with Plaintiff's classification of the alleged event as an 'intrusion' and had been unable to substantiate Plaintiff's claim that an 'intrusion' ever occurred." (R. Doc. 60 at 9).  Since the Rule 37 conference, Defendant contends, Plaintiff has been able to depose two witnesses regarding this alleged incident occurring on November 20 2013. (R. Doc. 60 at 10).  Defendant therefore argues "there is no additional information for Plaintiff to obtain" because, again, "the City Parish has no reason to believe that there was an 'intrusion' into Plaintiff's office on November 20, 2013." (R. Doc. 60 at 10).  The Court disagrees.

The fact that Defendant disagrees with Plaintiff's characterization of the November 20, 2013 incident as an intrusion, does not negate its discovery obligations.  During the hearing, Defendant's attorney informed the Court that Plaintiff may have lodged a verbal complaint following the alleged intrusion and that the complaint may have been forwarded up the chain of command.  This information is relevant to Plaintiff's allegations (R. Doc. 1-5 at 4) and Defendant must supplement

its response.  Therefore, Plaintiff's Motion to Compel (R. Doc. 49) is **GRANTED** as to

Interrogatory No. 15 and Defendant must **supplement** its response with **14 days** of this Order.

### G.    Interrogatory Nos. 18, 19, 20 and 21

Defendant objected to the following similarly worded interrogatories on multiple grounds.

But most importantly, Defendant objected based on its inability to understand the discovery

requests.  Each of these Interrogatories consist of a single sentence of approximately 200 words.

They are as follows:

**Interrogatory No. 18:**
Please describe and identify all persons, individuals, documents and records having been used,
being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance
of any business, transaction, work, duty, or function which was conducted, transacted, or performed
by or under the authority of the constitution or laws of this state, or by or under the authority of any
ordinance, regulation, mandate, or order of any public body, or concerning or referencing in any
way the acts or specific facts underlying the East Baton Rouge Parish – Department of Public
Works and Department of Information, newly created positions, requested positions, pay increases
to existing positions, individuals, qualifications who officially occupy or in lieu of since 2005 to
present, regardless of whether the matter approved through budget process or not, including but not
limited to all electronic and written documents and records, emails from any e-mail account, text
messages, written correspondence, tape recordings in any format, video recordings in any format,
social media postings, web pages, contracts, messages, and notes, including those documents and
records contained on Private computers and private cell phones.

**Interrogatory No. 19:**
Please describe and identify all persons, individuals, documents and records having been used,
being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance
of any business, transaction, work, duty, or function which was conducted, transacted, or performed
by or under the authority of the constitution or laws of this state, or by or under the authority of any
ordinance, regulation, mandate, or order of any public body, or concerning or referencing in any
way the acts or specific facts underlying the alleged theft of Trace 360 software's communications
since 2013 to present, among individuals from any East Baton Rouge Parish's agencies, the Parish
Attorney's Office, the Mayor's President Office and the Metropolitan Council, regardless of
whether the matter was heard or rescheduled, including but not limited to all electronic and written
documents and records, emails from any e-mail account, text messages, written correspondence,
tape recordings in any format, video recordings in any format, social media postings, web pages,
contracts, messages, and notes, including those documents and records contained on Private
computers and private cell phones.

**Interrogatory No. 20:**

Please describe and identify all persons, individuals, documents and records having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body, or concerning or referencing in any way the acts or specific facts underlying the alleged theft of Trace 360 software's communications since 2013 to present, between individuals from the East Baton Rouge Parish government and Stephanie Reigel – Reporter or any staff member with "Business Report" a monthly magazine publication and Internet and web-based publication, its affiliates and subsidiaries which is a Louisiana corporation incorporated under "Louisiana Business, Inc.", regardless of whether the matter was heard or rescheduled, including but not limited to all electronic and written documents and records, emails from any e-mail account, text messages, written correspondence, tape recordings in any format, video recordings in any format, social media postings, web pages, contracts, messages, and notes, including those documents and records contained on Private computers and private cell phones.

**Interrogatory No. 21:**

Please describe and identify all persons, individuals, documents and records having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body, or concerning or referencing in any way the acts or specific facts underlying the alleged theft of Trace 360 software's communications since 2013 to present, between individuals from the East Baton Rouge Parish government and Rebekah Allen – Reporter or any staff member with "The Advocate" newspaper, its affiliates and subsidiaries which is a Louisiana corporation incorporated under "Capital City Press, LLC," regardless of whether the matter was heard or rescheduled, including but not limited to all electronic and written documents and records, emails from any e-mail account, text messages, written correspondence, tape recordings in any format, video recordings in any format, social media postings, web pages, contracts, messages, and notes, including those documents and records contained on Private computers and private cell phones.

(R. Doc. 49-3 at 14-16).

In its Opposition, Defendant explains that these requests are almost "incoherent" and "it was unable to decipher what Plaintiff was seeking." (R. Doc. 60 at 10, 13).  During the Rule 37 conference, Defendant represents that "Plaintiff's counsel acknowledged that these interrogatories could cause confusion." (R. Doc. 60 at 11).  Nonetheless, Defendant contends that "no clarification was provided during the Rule 37 conference," despite its request. (R. Doc. 60 at 12).  Plaintiff

likewise could not explain why he did not limit or otherwise clarify Interrogatory Nos. 18, 19, 20 and 21 to remedy the confusion before filing the instant Motion.

Apparently recognizing that the actual interrogatories are nearly incomprehensible, Plaintiff provided a completely different version of Interrogatories 18, 19, 20 and 21 in his Memorandum in Support of his Motion to Compel. (R. Doc. 49-1 at 4-5).  The Court will not consider Plaintiff's attempt to rewrite his discovery for the first time in his Motion to Compel.  Apparently realizing that the Defendant's objections were well founded, Plaintiff should have made these revisions in formal discovery or as part of an effort to resolve this matter at the Rule 37 conference.

To comply with Rule 33 of the Federal Rules of Civil Procedure, interrogatories must be "sufficiently definite, clear, and concise, and they must adequately advise the interrogated party of the information requested." *Capacchione v. Charlotte-Mechlenburg Schools*, 182 F.R.D. 486, 491 (W.D.N.C. 1998).  And while "technical precision in the phrasing of interrogatories is not demanded, something more is required than the vague phraseology used here." *Struthers Scientific & International Corp. v. General Foods Corp.*, 45 F.R.D. 375, 382 (S.D. Tex. 1968) (sustaining the defendant's objection on grounds that interrogatory was "not specific enough to be answered without requiring the defendant to exercise its discretion and judgment in determining what is intended to be covered").

The Court agrees with the conclusion that the Defendant "did not understand what Plaintiff was seeking." (R. Doc. 60 at 12).[3]  The Court shares that lack of understanding.  If the Court issued an order compelling the Defendant to respond to these Interrogatories, it would be unable to enforce

---

[3] For example, Interrogatory Nos. 18 and 19 left Defendant asking: "How can a person or individual be prepared, possessed, or retained for use? How can a person reference acts underlying the Department of Public Works or the 'alleged theft of Trace 360 software's communications'? And what exactly are 'software communications.'?" (R. Doc. 60 at 12).

that order.  For these reasons, the Motion to Compel is **DENIED** as to Interrogatory Nos. 18, 19, 20 and 21.

       **H.**       **Reasonable Expenses and Attorney's Fees**

      Finally, Plaintiff seeks an award of reasonable costs and attorney's fees associated with his Motion to Compel.  Rule 37(a)(5) allows for an award of expenses and attorney's fees to be paid to the moving party when a motion to compel is granted.  However, when the motion is granted in part and denied in part, as is the case here, the Court may "apportion the reasonable expenses" between the parties.  Because the Motion was only partially granted and Defendant's objections were not unfounded, the Court will order both parties to pay their own costs associated with Plaintiff's Motion to Compel.  Therefore, Plaintiff's Motion to Compel is **DENIED** to the extent he seeks an award of attorney's fees and reasonable expenses under Rule 37(a).

      Signed in Baton Rouge, Louisiana, on March 29, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**