UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

EIAD ODEH                                    CIVIL ACTION

VERSUS

CITY OF BATON ROUGE/PARISH              NO. 14-00793-JJB-RLB
OF EAST BATON ROUGE

## RULING

Before the Court is a *Renewed Motion for Summary Judgment* filed by the
Defendant, the City of Baton Rouge/Parish of East Baton Rouge.[1]  The Plaintiff, Eiad
Odeh, filed an *Opposition* to which the Defendant filed a *Reply*.[2]  For the following
reasons, the Defendant's *Motion* is GRANTED.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[3]

In 2006, Eiad Odeh ("Plaintiff" or "Odeh"), an individual of Middle Eastern descent,
worked as a database systems administrator and held the title of Special Assistant to the
Director of the City of Baton Rouge/Parish of East Baton Rouge's ("Defendant" or "City-
Parish") Department of Public Works ("DPW").[4]  Following an in-depth study of DPW, the
City-Parish decided to reorganize DPW into six different departments and, as a result, the
Director of DPW position and Odeh's position as Special Assistant to the Director of DPW
were going to be eliminated.[5]  Odeh served in the position of Special Assistant until April
3, 2013.[6]

---

[1] Doc. 147.
[2] Doc. 151 and Doc. 152.
[3] On March 14, 2017, the Court entered an *Order* granting in part and denying in part Odeh's request to file
certain documents in excess of the Court's page limits into the record.  The Court denied Odeh's request
to file his Statement of Contested Material Facts, Declaration of Plaintiff regarding Exhibit A, and Plaintiff's
Exhibit A (summary of evidence). Doc. 150.
[4] Doc. 1-5, p. 1, ¶3; Doc. 124, p. 8; Doc. 147-8, p. 8.
[5] Doc. 76-7, pp. 3, 6-7, and 10; Doc. 147-8, pp. 7-8; Doc. 76-13, p. 3.
[6] Doc. 1-5, p. 1, ¶3.

Later that same month, due to the reorganization of DPW and the need for someone with Odeh's capabilities in the Communications District, the City-Parish transferred Odeh to the City-Parish's Emergency Management Services ("EMS") to serve in a similar technical position where he would oversee databases and perform IT tasks.[7] In this position, Odeh received the same pay and benefits that he was making prior to his transfer to EMS.[8]

In January of 2014, ten months prior to his resignation, Odeh received a written reprimand from his supervisor, Matthew Hobson ("Hobson"), involving an incident in which Odeh had added an extra security level on another City-Parish employee's computer, which was owned by the City-Parish.[9] Odeh appealed the reprimand, and it was affirmed by the Director of EMS, Chad J. Guillot ("Guillot").[10] In August of 2014, the City of Baton Rouge Parish of East Baton Rouge Personnel Board convened and denied Odeh's request for a hearing on his appeal.[11]

When the City-Parish's new budget cycle began in January of 2014, the City-Parish requested that Odeh officially apply for his position with EMS, so that Odeh would be accurately paid from EMS' budget instead of DPW's budget.[12] However, Odeh decided he was no longer interested in the position and did not submit an application.[13] Instead, he requested to be transitioned back to his prior position with DPW.[14] However,

---

[7] Doc. 1-5, p. 3, ¶10; Doc. 76-7, p. 3; Doc. 147-5, pp. 2-3; Doc. 124, p. 8.
[8] Doc. 147-8, pp. 4-5.
[9] Doc. 76-9, pp. 1-2; Doc. 147-7, p. 2. The laptop belonged to a City-Parish employee who was under investigation by the City-Parish. Doc. 147-6, p. 1.
[10] Doc. 147-5, p. 5.
[11] Doc. 147-9, p. 1.
[12] Doc. 76-8, pp. 10-11.
[13] Doc. 147-5, p. 4; Doc. 124, p. 8; Doc. 76-2, p. 6.
[14] Doc. 147-8, pp. 6-7; Doc. 124, p. 8; Doc. 147-8, p. 8.

due to the reorganization, Odeh's former position was being abolished.[15] Odeh did not request that he be transferred into any other position with the City-Parish.[16]

In July of 2014, Odeh requested and was granted leave under the Family and Medical Leave Act ("FMLA").[17] Odeh never returned to his position. On October 13, 2014, Odeh resigned from his position with the City-Parish.[18]

Approximately one month later Odeh filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Louisiana Commission on Human Rights.[19] Thereafter, on December 23, 2014, Odeh filed this lawsuit against the City-Parish asserting 42 U.S.C. § 1983 claims, Louisiana state law claims of defamation, national origin discrimination/harassment under Louisiana's Employment Discrimination Law ("LEDL"), La. R.S. 23:301, *et seq.*, and whistleblower claims under Louisiana's Whistleblower Statute, La. R.S. 23:967. In an earlier *Ruling*, the Court dismissed Odeh's 42 U.S.C. § 1983 claims and his defamation claim, leaving only his LEDL and state whistleblower claims.[20]

In anticipation of the trial in this matter and in its review of the parties' *Joint Pretrial Order*, the Court deemed that certain issues needed to be resolved in order to advance this case to a posture that was trial ready.[21] The Court ordered the City-Parish to re-urge its *Motion for Summary Judgment* on the issue of prescription regarding Odeh's national origin constructive discharge and hostile work environment claims.[22] The Court also

---

[15] Doc. 76-5, p. 10; Doc. 76-7, pp. 6-7.
[16] Doc. 147-8, p. 8.
[17] Doc. 147-8, p. 17; Doc. 124, p. 8.
[18] Doc. 147-8, p. 18; Doc. 124, p. 8.
[19] Doc. 1-5, p. 2, ¶7.
[20] Doc. 117.
[21] Doc. 124.
[22] Doc. 146. The issue of prescription had been raised in an earlier summary judgment motion, but was not addressed by the Court.

directed the City-Parish to address the remaining state law whistleblower claims brought under La. R.S. 23:967. [23]

## II.    LAW AND ANALYSIS[24]

### A.    SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[25] "An issue is material if its resolution could affect the outcome of the action."[26] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[27] "A party moving for summary judgment 'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[28] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[29] However, the non-moving party's "burden is not satisfied with some metaphysical doubt as to the

[23] Doc. 146.

[24] In its *Reply*, the City-Parish moved the Court to disregard certain documents submitted by Odeh in support of his *Opposition* on evidentiary grounds. The Court shall address those evidentiary challenges as necessary throughout this *Ruling*.

[25] Fed. R. Civ. P. 56(a).

[26] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005)(quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003)).

[27] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[28] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D.La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986))).

[29] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)(internal quotations omitted)).

material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[30]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[31] The Court must resolve all reasonable factual inferences in favor of the nonmoving party.[32] However, "[t]he court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[33] "Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without 'any significant probative evidence tending to support the complaint.'"[34]

B.    PRESCRIPTION[35]

The City-Parish argues that any incidents pre-dating June 3, 2013, are untimely and should not be considered by the Court in conducting its analysis of Odeh's national origin discrimination and harassment/hostile work environment claims. In response, Odeh contends that those instances of alleged discrimination preceding June 3, 2013 should be considered because they are timely under the continuing violation theory.[36]

---

[30] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal quotations and citations omitted)).

[31] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[32] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[33] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

[34] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249)(citation omitted)).

[35] Contrary to Odeh's assertion otherwise, the Court did not order the parties to address the general admissibility of Odeh's "evidence of discrimination, harassment and retaliation prior to June 3, 2017." Doc. 151, p. 3.

[36] The Court is admittedly confused by Odeh's position in his *Opposition*. In the *Joint Jury Instructions* Odeh admits that "any allegations underlying Plaintiff's claim for employment discrimination that arose more

Initially, the Court must determine which allegations it should consider in its prescription analysis. In addition to several allegations of national origin discrimination included in his *Petition*, Odeh also identified additional incidents of discrimination in the parties' *Pretrial Order*.[37] As to the latter incidents, the City-Parish argues that they are newly offered allegations that should not be considered by the Court because Odeh failed to provide this information during his deposition. In response, Odeh argues that because defense counsel did not specifically ask him "if those were all [of] the incidents and the counsel for Defendant changed subject matter areas without asking Odeh if that was all [of] the incidents," then "Odeh cannot be limited to the testified incidents if he was not asked if that was all [of] the incidents."[38]

The Court has reviewed Odeh's deposition transcript and is unpersuaded by his argument. On no less than four occasions during the deposition, defense counsel asked

---

than eighteen (18) months prior to the filing of his *Petition* on December 3, 2014" are not actionable, but are "relevant evidence to prove discrimination and retaliation." Doc. 143, p. 16, n. 17. Odeh's prior statement appears to be in direct contradiction to the argument he asserts in his *Opposition* to the *Renewed Motion for Summary Judgment*.

[37] Odeh did not argue that these newly alleged incidents supported his national origin discrimination or harassment/hostile work environment claims in his *Opposition* to Defendant's first *Motion for Summary Judgment*. In the *Pretrial Order*, Odeh listed the following as "[e]xamples of harassment and discrimination" that he experienced during his employment with the City-Parish: "the failure to reclassify his position to DPW Computer Manager; denial of Retention Rate at Step 6 to properly compensate Odeh; denial of position of Information Services Director, which position was ultimately filled by a non-Middle Eastern person; denial of office space to Odeh in the move to the 8th floor of the City Hall building when office space was allocated to non-Middle Eastern employees; failure to consult Odeh about his position in the reorganization of the DPW when non-Middle Eastern employees at Odeh's level were consulted; assigning Odeh to a position in EMS that had no potential for advancement by Odeh, when non-Middle Eastern employees were assigned to positions with advancement possibilities; being restricted in his ability to do his job by being instructed not to develop any software. Non-Middle Eastern employees did not have similar restrictions; being falsely accused of using a City-Parish database for his personal use; failure to properly investigate a complaint by Odeh that someone had entered Odeh's work area without authorization; being threatened [with] being put back in his Engineer in Training Applicant position that Odeh held for 8 years prior (with a substantial reduction in pay) if he did not apply for a position in EMS that Odeh considered impossible for one person to accomplish according to its job description; being falsely accused of attempting to steal City-Parish Mayor's [Office] of Homeland Security and Emergency Preparedness (MOSHEP) software; and being constructively discharged on October 13, 2014." Doc. 124, pp. 2-3. Odeh failed to provide any corresponding dates.

[38] Doc. 151, p. 6.

Odeh, in more ways than one, to explain all of the specific instances that served as the basis for his belief that he had been discriminated against because of his national origin.[39] The questions asked were clearly meant to elicit responses identifying all of the incidents upon which Odeh based his national origin discrimination claims. To the extent that Odeh believed that he failed to mention any other additional incidents giving rise to his claims following his deposition testimony, he failed to submit an errata sheet per Rule 30(e) of the Federal Rules of Civil Procedure to supplement his prior testimony.

The Court has taken this issue one step further. The Court has reviewed Odeh's *Opposition* to the original summary judgment motion filed by the City-Parish.[40] In his *Opposition*, Odeh argued and offered what he deemed were material facts in dispute relative to his discrimination and harassment claims,[41] putting the Defendant on notice of those allegations and evidence Odeh was relying on to support his claims. Beyond the scope of his deposition testimony, Odeh asserted that he was never consulted about his position in the midst of the 2012 reorganization of DPW, and that he was assigned to another department, EMS, in April of 2013. Therefore, the Court finds that even though

---

[39] Doc. 147-8, p. 9 ("Q. Okay. Tell me what formed the basis of your allegations in Exhibit 1. Recognizing that you say the initial date was April 3, 2013, and not 2014. What formed the basis of your belief that you were discriminated because of your national origin?"); p. 11 ("Q: Are there any other incidents or discrete acts of discrimination that reflected poorly upon your national origin that you can think of besides these two [emails]?"); p. 13 ("Q: Were there any other instances of direct comments, emails, letters, referencing your national origin that you hadn't already mentioned?"); p. 14 ("Q: Can you think of any other specific times that your national origin was referenced in a demeaning way by anybody at City-Parish, specifically?").

[40] Doc. 90, pp. 15-21. Notably, Odeh did not adopt the arguments he made in his original *Opposition* in his *Opposition* to the *Renewed Motion for Summary Judgment*.

[41] To the extent Odeh may argue that while other allegations may not have been in his *Opposition*, but were somehow contained in the evidence attached thereto, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citation omitted). *See also, Barnett v. Mentor H/S, Inc.*, 133 F.Supp.2d 507, at 510 (N.D.Tex. 2001)(citing *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 403 (6th Cir. 1992) ("the Court has no duty to search the record for triable issues. The Court need only rely on the portions of submitted documents to which the non-moving party directs.").

Odeh did not testify to these incidents during his deposition, Odeh had put the Defendant on notice of these two incidents when he filed his *Opposition* in April of 2016.[42] Accordingly, the Court shall also consider these two additional incidents of alleged discrimination in conducting its analysis.

In sum, the following ten incidents of alleged discrimination based upon Odeh's national origin shall be considered by the Court in conducting its prescription analysis:

1. Right after September 11, 2001, an unknown female coworker in permanent inspections asked Odeh if he was "going to put a bomb on himself and blow himself up";[43]

2. In 2008 or 2009, JoAnne Moreau introduced Odeh in a meeting as "our local terrorist";[44]

3. In a September 3, 2009 email from MOSEP Director JoAnne Moreau to Odeh, she asked him "[A]re you going back to being a terrorist...?"[45]

4. On October 29, 2009, Odeh was asked in an email from Jonathon Adams, supervisor for the City Parish, "Do you understand English?"[46]

5. In 2011 or 2012, Odeh applied for and was not selected for the position of information systems director;[47]

6. In 2012, the City-Parish failed to consult Odeh about his position in the reorganization of the DPW;[48]

7. In April of 2013, the City-Parish reassigned Odeh to a position in EMS;[49]

8. On January 7, 2014, Odeh was issued a Written Reprimand for "unauthorized altering/tampering of a City-Parish computer in the 911 Communications District Office";[50]

9. In March of 2014, Odeh was transferred to a new position within EMS and when he refused to accept that transfer, he was advised that his prior

---

[42] Defendant actually addressed these two incidents in its original *Reply* in support of its summary judgment motion. Doc. 102.
[43] Doc. 147-8, p. 14.
[44] Doc. 147-8, p. 13.
[45] Doc. 76-5, p. 14; Doc. 147-8, p. 10.
[46] Doc. 76-5, pp. 14-15; Doc. 147-8, pp. 10-11.
[47] Doc. 76-5, p. 15; Doc. 147-8, p. 11.
[48] Doc. 90, p. 16; Doc. 124, p. 3.
[49] Doc. 90, p. 16; Doc. 124, p. 3; Doc. 1-5, p. 3, ¶10.
[50] Doc. 1-5, p. 4, ¶14.

position at DPW was being abolished and that he was being placed into another position;[51] and

10. On October 10, 2014, Odeh was constructively discharged.[52]

Louisiana Revised Statute Section 23:303(D) provides that a cause of action brought under the LEDL:

> shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months.[53]

Based on the foregoing, the maximum prescriptive period for Odeh's LEDL discrimination claims is 18 months. Odeh filed his *Petition* on December 3, 2014. Consequently, any claims predicated on pre-June 3, 2013 conduct are time-barred unless Odeh can show that the continuing violation theory applies.[54]

"The continuing violation theory relieves a plaintiff of establishing that all of the complained-of conduct occurred within the applicable period if the plaintiff can show a

---

[51] Doc. 1-5, p. 4, ¶¶15-16.
[52] Doc. 1-5, p. 6, ¶19.
[53] La. R.S. 23:303(D).
[54] Louisiana jurisprudence refers to this concept as the continuing tort doctrine. *Wilson v. Bd. of Sup'rs of Louisiana State Univ. Agric. and Mechanical College*, 2014-0074 (La.App. 1 Cir. 4/8/16); 2016 WL 1394237, *4. ("The courts have recognized an exception to the general rules of prescription where unlawful employment practices manifest themselves over time causing continuing damage. Louisiana jurisprudence usually refers to such an allegation as the 'continuing tort doctrine.' The same concept is recognized in the federal jurisprudence, which usually calls this kind of allegation the 'continuing violation theory.'" (internal citations omitted)). Louisiana courts interpreting the continuing tort doctrine have sought guidance from federal jurisprudence interpreting the continuing violation doctrine or theory. *See, e.g., Bustamento v. J.D. Tucker*, 607 So.2d 532 (La. 1992). In *Price v. PCS Nitrogen Fertilizer, L.P.*, Judge Tyson explained that "it stands to reason that the [two doctrines] must have similar, if not the same, theoretical underpinnings." *Price v. PCS Nitrogen Fertilizer, L.P.*, 2010 WL 1005181, at *3 (M.D.La. Mar. 15, 2010). Therefore, Judge Tyson analyzed the plaintiff's claims under the federal "continuing violation doctrine." *Id.* The Fifth Circuit has also referred to the two doctrines as being "substantially similar." *See Williams v. Otis Elevator Co.*, 557 Fed.Appx. 299, 302 (5th Cir. Feb. 14, 2014). Hence, the Court shall apply the federal continuing violation doctrine analysis here.

series of related acts, one or more of which falls within the limitations period."[55]  "The continuing violation doctrine is designed to 'accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all discriminatory acts committed as part of this pattern or policy can be considered . . . timely.'"[56] The continuing violation doctrine "generally applies to hostile work environment claims, as opposed to intentional acts of discrimination, like demotion or failure to promote."[57]

A plaintiff asserting the applicability of the continuing violation doctrine must show "an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action."[58]  The Fifth Circuit recently explained that the continuing violation theory is limited in the following ways: "(1) the plaintiff must demonstrate that the separate acts are related; (2) the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it; and (3) the doctrine may be tempered by the court's equitable powers, which must be exercised to 'honor Title VII's remedial purpose without negating the particular purpose

---

[55] *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001)(citing *Messer v. Meno*, 130 F.3d 130, 135 (5th Cir. 1997)).

[56] *Id.* at 351-52 (quoting *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999)).

[57] *Vann v. Mattress Firm, Inc.*, Civil Action No. H-12-3566, 2014 WL 4677459, *4 (S.D.Tex. Sept. 18, 2014)(citing *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998)).

[58] *Id.* (citing *Huckabay*, 142 F.3d at 239).

of the filing requirement.'"[59]   The continuing violation theory allows untimely acts of alleged discriminatory conduct to be considered when determining liability.[60]

In *National Rail Road Passenger Corp. v. Morgan*, the Supreme Court clarified the limits of the continuing violation doctrine in the context of employment discrimination litigation.[61]   The Court distinguished between discrete discriminatory actions, which "'occur' on the day that it 'happened,'" and the creation or perpetuation of a hostile work environment, which "occurs over a series of days or perhaps years."[62]   The *Morgan* Court held that discrete discriminatory acts are not actionable if time barred, even when they are related to incidents that occurred within the timely filing period.[63]   Rather, discrete acts, such as termination, failure to promote, denial of transfer, or refusal to hire, "constitute a separate actionable unlawful employment practice."[64]   Accordingly, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."[65]   In contrast, a hostile work environment claim will not be time barred if all of the acts that comprise the claim are part of the same "unlawful employment practice" and at least one

---

[59] *Heath v. Bd. of Sup'rs for Southern Univ. and Agric. and Mechanical College*, 850 F.3d 731 (5th Cir. 2017) (quoting and citing *Stewart v. Miss. Transport Commission*, 586 F.3d 321, at 328 (5th Cir. 2009)(internal quotation marks and citation omitted)).   In *Heath*, the Fifth Circuit revisited and further clarified the three limitations on the applicability of the continuing violation theory.   The *Heath* Court expressly rejected and overruled its pre-*National R.R. Passenger Corp. v. Morgan* decisions applying the continuing violation doctrine to the extent those decisions "held that the continuing violation doctrine [did] not apply when an employee was or should have been aware earlier of a duty to assert her rights." *Id.* at 739.

[60] *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

[61] *Id.*

[62] *Id.* at 110 and 115.

[63] *Id.* at 113.

[64] *Id.* at 114.   This is not an exhaustive list of discrete employment acts.   In *Pegram v. Honeywell*, the Fifth Circuit noted that the *Morgan* Court "did not limit discrete acts solely to termination, failure to promote, denial of transfer, or refusal to hire.   The Court stated that the aforementioned were merely 'easy to identify' as discrete acts." *Pegram v. Honeywell*, 361 F.3d 272, at n. 5 (5th Cir. 2004).

[65] *Id.* at 113.

act contributing to the claim occurs within the filing period.[66] Therefore, discrete acts of discrimination are timely only when such acts occur within the limitations period, whereas hostile work environment claims are only timely where at least one of the acts comprising the claim occurs within the limitations period. In determining whether acts are untimely with respect to deadlines set forth under the LEDL, the same analysis is utilized.[67]

To the extent that Odeh relies upon acts preceding the June 3, 2013 prescription cut-off date to support his national origin discrimination and harassment claims, the Court finds that those acts have prescribed. The 2011 or 2012 decision not to select Odeh for the information systems director position and the April 2013 reassignment to EMS are clearly discrete acts because they are the equivalent of failure to promote or a refusal to hire.[68] The 2001 statement by an unknown co-worker occurred at least seven years before any other alleged discriminatory action was taken towards Odeh. The Court finds that this significant gap in time clearly shows that the 2001 incident was a separate and isolated incident.

As for the remaining four instances of alleged discrimination, the Court finds they are not related or continuing in nature. The statement by Moreau in 2008 or 2009 and her September 2009 email, in which she used the word "terrorist," and the email from Adams in October of 2009, in which he asked Odeh if he understood English, are not related to the alleged failure of DPW to consult Odeh in the reorganization of DPW in

---

[66] *Id.* at 103; 117.
[67] *Foreman v. Our Lady of Lourdes Regional Medical Center, Inc.*, Civil Action No. 13-CV-780, 2013 WL 5410135, at *4 (W.D.La. Sept. 25, 2013)("Under Louisiana law, the prescription period for such discrete discriminatory acts begins to run on the day the act occurred." (citation omitted))
[68] *See, e.g., Supinger v. Virginia*, Case No. 6:15-cv-00017 (W.D.Va. Apr. 26, 2017), 2017 WL 1498130, *9 (explaining that plaintiff's reassignment was the "type of 'discrete' act contemplated by *Morgan*"); *Southward v. Elizabeth Bd. of Education*, 2017 WL 11924, *8 (D.N.J. Jan. 11, 2017)(reassignment was discrete act); *Price v. Jefferson Cty*, 470 F.Supp.2d 665, 684-85 (E.D.Tex. Sept. 20, 2006)(reassignments constitute discrete acts that are separately actionable).

2012 or the 2014 alleged discriminatory incidents. Odeh has not shown that any of the latter incidents involved Moreau or Adams. The Court also finds that the nature of the earlier comments is dissimilar to any failure to consult Odeh about the reorganization of DPS, the written reprimand he received in January of 2014, and the abolishment of Odeh's former position with DPW in March 2014. The Court further finds that the three year time lapse between the October 2009 incident and the 2012 incident without any other intervening incidents of discrimination demonstrates that the alleged violations were not continuing in nature. Likewise, the two year gap of time between the 2012 incident and the January 2014 letter of reprimand also shows that the violations were not continuing. Odeh has simply failed to carry his burden of demonstrating how these incidents, as well as the March 2014 incident, are part of the same organized scheme. Rather, the Court finds that each of the incidents preceding the June 3, 2013 prescriptive cut-off date are discrete acts.

Based on the foregoing, the Court finds that Odeh has failed to satisfy his burden of showing that the continuing violation theory is applicable in this case. Accordingly, the incidents preceding the June 3, 2013 prescription cut-off date have prescribed and cannot support Odeh's national origin discrimination and harassment/hostile work environment claims.

C.     Do Odeh's Discrimination and Harassment/Hostile Work Environment Claims Survive Summary Judgment?[69]

Considering the Court's finding on prescription, the only allegations upon which Odeh may rely to establish his national origin discrimination claim and national origin

---

[69] In the *Renewed Motion for Summary Judgment*, Defendant directed the Court to its original *Motion for Summary Judgment* for further support of the dismissal of these claims.

harassment/hostile work environment claim are the following: (1) On January 7, 2014, Odeh was issued a "baseless" Written Reprimand for "unauthorized altering/tampering of a City-Parish computer in the 911 Communications District Office";[70] (2) In March of 2014, Odeh was transferred to a new position within EMS and when he refused to accept the transfer, he was advised that his previous position at DPW was being abolished and that he was being placed into another position;[71] and (3) On October 10, 2014, Odeh was constructively discharged.[72]

When Title VII discrimination claims are based on circumstantial evidence, they are analyzed under the *McDonnell Douglas* burden-shifting framework.[73] Importantly, the LEDL applies the same standards and burden shifting analysis used in Title VII claims.[74] Therefore, the Court shall rely on Title VII's framework and standards.

Under the burden-shifting framework, the plaintiff must first present a *prima facie* case of discrimination. To establish a *prima facie* claim of national origin discrimination under Title VII, a plaintiff must establish that he (1) belongs to a protected group; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) that similarly situated employees were treated more favorably.[75] If the plaintiff is successful in presenting his *prima facie* case of discrimination, then the burden of production shifts to the employer to "rebut a presumption of discrimination by articulating a legitimate, nondiscriminatory reason for adverse employment action."[76] "If the employer meets its

---

[70] Doc. 1-5, p. 4, ¶14; Doc. 147-6, pp. 1-2.
[71] Doc. 1-5, p. 4, ¶¶15-16.
[72] Doc. 1-5, p. 6, ¶19.
[73] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)(citation omitted).
[74] *Overman v. City of East Baton Rouge*, 656 Fed.Appx. 664, n. 3 (5th Cir. 2016)(citing *Baker v. FedEx Ground Package Sys. Inc.*, 278 Fed.Appx. 322, 327 (5th Cir. 2008)).
[75] *Okoye v. Univ. of Tex. Hou. Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)(citations omitted).
[76] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007)(citation omitted).

burden, then it shifts back to the plaintiff to present substantial evidence that the employer's reason was pretext for discrimination."[77] "If the plaintiff can show that the proffered explanation is merely pretextual, that showing, when coupled with the *prima facie* case, will usually be sufficient to survive summary judgment."[78]

The first two elements of Odeh's *prima facie* case are uncontested. The major point of contention is whether Odeh suffered an adverse employment action. Initially the Court will address the alleged March 2014 incident.

Odeh essentially contends that because he refused to accept the new position in EMS and requested a transfer back to his former position in DPW, the City-Parish eliminated his former position. Odeh relies upon his own subjective belief in support of this contention. Assuming, without deciding that this amounts to an adverse employment action and that Odeh has shown that similarly situated individuals were treated more favorably than him so as to establish a *prima facie* case of discrimination, the Court finds that his disparate treatment claim would still fail because the City-Parish has offered a legitimate, nondiscriminatory reason for the elimination of Odeh's former position with DPW.

The City-Parish has offered undisputed evidence showing that as a result of a reorganization process of DPW that began in 2012 and involved a team of consultants,[79] Odeh's position, along with his supervisor's position, were going to be eliminated.[80] The

---

[77] *Id.*

[78] *Id.*

[79] Doc. 76-13, p. 3; Doc. 76-7, p. 10.

[80] Doc. 76-7, pp. 6-7 (Deposition of Daniel: "I told [Odeh] that the position that he was coming back to was not going to exist in the reorganization, because we had already decided how the reorganization was going to take place....I told [Odeh] that [the position of Special Assistant to the Director of Public Works] was going to be dissolved in the reorganization of Public Works, which was going to be presented to the council and then voted on by the voters, so if that all happened, that position was going to go away, because there was no more Director, so there couldn't be a Special Assistant to the Director.")

duties of the Director of DPW were going to be split up among six departments.[81] The

evidence further shows that Odeh's former position as Special Assistant to the Director

of DPW and the Director's position were, in fact, eliminated.[82] Additionally, the City-Parish

has offered uncontroverted evidence that any discussions about the available positions

at DPW post-reorganization were not held with Odeh until he already declined the EMS

position.[83]

Courts have routinely found that the elimination of job positions due to restructuring

are legitimate, non-discriminatory reasons for an adverse employment action.[84] This case

is no different. Because Odeh has offered no evidence aside from his own subjective

belief that his national origin was the real reason for the City-Parish's decision to eliminate

his prior position at DPW, and because the Court is under no duty to search the entire

---

[81] Doc. 76-7, p. 7.

[82] Doc. 76-7, p. 8. The reorganization was presented to the City Council and then to the voters of East Baton Rouge Parish. The voters of East Baton Rouge Parish voted to approve the reorganization on December 6, 2014. Doc. 76-7, p. 10. See Louisiana's Secretary of State's website for PW Plan of Government—Reorganization of the Dept. of Public Works https://voterportal.sos.la.gov/Static#/2014-12-06/resultsRace/17. Hyder v. Quarterman, C.A. No. C-07-291, 2007 WL 4300446, *3 (S.D. Tex. Oct. 10, 2007)("The Fifth Circuit has determined that courts may take judicial notice of governmental websites.").

[83] Doc. 76-7, p. 11. (Deposition of Daniel: "Q. And it was only after he refused to take that job or to apply for it, that you informed him of the possible options of dropping back down. A. That is correct."). In these discussions, Daniel testified that "it was [his] understanding that [Odeh] would bump back to the last position that he had with the Department of Public Works, and the person that was in that position would get bumped down to whatever position that they had, and the person in that position would get bumped down to whatever position they had. That was [his] understanding of how it worked, but [Daniel] also told [Odeh] that he needed to check with Human Resources, to make sure that was correct." Doc. 76-7, p. 8. Daniel also testified that he told Odeh to consult with Human Resources regarding any car allowance. Doc. 76-7, p. 9.

[84] Jackson v. Honeywell Intern., Inc., 601 Fed.Appx. 280, 285 (5th Cir. 2015)("We have held that an elimination of a position is a legitimate, non-discriminatory reason for an adverse employment action"); Jackson, Jr. v. Corporation Service Co., Civ. Action No. H-11-4404, 2013 WL 11309365, *11 (S.D. Tex. April 17, 2013)("In [the Fifth Circuit] the elimination of positions, and reductions in force in general, are legitimate reasons for adverse employment actions." (citations omitted)); Frensley v. North Mississippi Med. Ctr, Inc., Civil Action No. 1:09-cv-118, 2010 WL 3655860, *8 (N.D.Miss. Sept. 9, 2010)(citing Taylor v. Albermarle, 286 Fed.Appx 134, 134-35 (5th Cir. 2008)(reduction in force is a legitimate, nondiscriminatory reason); Gillapsy v. Dallas Indep. Sch. Dist., 278 Fed.Appx 307, 312 (5th Cir. 2008)(elimination of position due to restructuring was a legitimate, nondiscriminatory reason for an adverse employment action). See also, Newton v. Southern Methodist University, No. 3:96-CV-2881, 1998 WL 133063, *3 (N.D.Tex. Mar. 19, 1998)(citing cases for proposition that the "Fifth Circuit has repeatedly recognized that the elimination of positions, and reductions in force in general, are legitimate reasons for adverse employment actions").

record to find evidence supporting his *Opposition*, the Court finds that Odeh's national origin discrimination claim, to the extent it is premised on the elimination of his position with DPW, must fail.[85]

The City-Parish also contends that Odeh's January 14, 2014 Written Reprimand for "unauthorized altering/tampering of a City-Parish computer in the 911 Communications District Office" does not amount to an adverse employment action.[86] The City-Parish is correct on this point.

The Fifth Circuit has adopted a "strict interpretation" of the adverse action requirement, whereby "an employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action" for purposes of a discrimination claim under Title VII.[87] Thus, "where pay, benefits, and level of responsibility remain the same," employment actions are typically not considered adverse.[88] An adverse employment action consists of "decisions such as hiring, granting leave, discharging, promoting, and compensating."[89] Here, Odeh has failed to present any evidence that he experienced a change in his employment status (i.e., pay, benefits, or job responsibilities) as a result of the written reprimand.[90] Because Odeh cannot

---

[85] *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996).

[86] The Letter of Reprimand was issued because neither Odeh nor Eva Kelley (other City-Parish employee who was under investigation by the City-Parish) "sought authorization to add the extra security login nor was it ever brought to [District Manager Matt Hobson's] attention that a security breach was suspected or what the circumstances were that led to that suspicion." Doc. 76-9, p. 1; Doc. 76-10, p. 3; Doc. 147-6, p. 1; Doc. 147-7, p. 2. Odeh acknowledged that this was the reason he was issued the reprimand. Doc. 76-5, p. 23; Doc. 147-8, p. 16.

[87] *Pegram*, 361 F.3d at 282 (citation omitted).

[88] *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999)(citation omitted).

[89] *Pegram*, 361 F.3d at 282 (quoting *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002)).

[90] *See Minnis v. Bd. of Sup'rs of Louisiana State Univ. and Agric. and Mechanical College*, 55 F.Supp.3d 864, 877 (M.D.La. 2014)(finding that written reprimand without any evidence that plaintiff experienced a change in employment status of any kind does not amount to an adverse employment action under Title VII).

establish this essential element of his *prima facie* case, his discriminatory reprimand claim must be dismissed.

Finally Odeh contends that his resignation was a constructive discharge based on national origin discrimination. As the Fifth Circuit has explained, "constructive discharge is not itself a cause of action. It is a means of proving the element of an adverse employment action where the employee quits instead of being fired."[91]

"A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign."[92] To demonstrate constructive discharge, a plaintiff must prove that "working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."[93] "This is an objective standard, and what is subjectively intolerable to a particular employee may strike a court or jury as merely unpleasant."[94]

"Part of an employee's obligation to be reasonable is an obligation not to assume the worst and not to jump to conclusions too fast."[95] "In other words, [a] plaintiff must complain of the unpleasant working conditions and give her employer a reasonable time to remedy them before [he] concludes that the employer is acting deliberately to force [his] resignation."[96]

In assessing whether a constructive discharge has occurred, the Court should consider the following aggravating factors:

---

[91] *Wells v. City of Alexandria*, No. 03-30750, 2004 WL 909735, *3 (5th Cir. Apr. 29, 2004).

[92] *Hunt v. Rapides Healthcare Sys, LLC*, 277 F.3d 757, 771 (5th Cir. 2001), *abrogated on other grounds by Wheat v. Fla. Parish Juvenile Justice Comm'n*, 811 F.3d 702 (5th Cir. 2016).

[93] *Bourque v. Powell Electrical Mfg. Co.*, 617 F.2d 61, 65 (5th Cir. 1980).

[94] *Green v. Brennan*, 136 S.Ct. 1769, 1789 (2016).

[95] *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 310 (5th Cir. 1987)(citation omitted).

[96] *Smith v. Florida Parishes Juvenile Justice Commission*, Civil Action No. 15-6972, 2017 WL 1177905, *6 (E.D.La. Mar. 30, 2017)(citations omitted).

(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.[97]

Importantly, "[d]iscrimination alone, without aggravating factors, is insufficient" to demonstrate constructive discharge.[98]

To the extent Odeh contends that he was constructively discharged because his former position at DPW had been eliminated and because he had received a written reprimand, the Court finds that these fall far short of what is necessary to qualify as constructive discharge. As previously discussed, Odeh has offered no evidence that he experienced any consequences, such as a demotion, reduction in salary, reduction in job responsibilities, or reassignment to menial duties, from the issuance of the written reprimand. As for the EMS position, Odeh testified that he declined the position because it could not be performed by only one person;[99] rather, he thought it would take at least 15 people to satisfy all of the job duties.[100] The undisputed evidence, however, shows that when Odeh decided not to apply for the EMS position and did not return to work after taking FMLA leave, the position was filled and satisfactorily performed by one person.[101] If Odeh felt forced to accept the EMS position because his prior position at DPW was being eliminated, the evidence shows that Odeh could have returned to DPW; however, due to the City-Parish's legitimate decision to reorganize DPW, which involved the dissolution of Odeh's former position, he would have been "bump[ed] back to the last

---

[97] *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).
[98] *Smith*, 2017 WL 1177905, at *6 (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)).
[99] Doc. 147-8, p. 5. (when asked during his deposition, Odeh testified that he believed the job was more than one man could perform).
[100] Doc. 147-5, p. 4. (Guillot testified that it was Odeh's opinion "that it was a job that would take 15 people to do.")
[101] Doc. 76-7, p. 10-11.

19

position that he had with the [DPW]" with the commensurate salary.[102] In light of this knowledge, Odeh never inquired about any other available positions within the City-Parish.[103] Based on this evidence, the Court finds that no reasonable juror could conclude that the City-Parish deliberately made Odeh's working conditions so intolerable that a reasonable person in his shoes would feel forced into an involuntary resignation.

Considering the foregoing, the Court finds that Odeh's national origin discrimination claim must be dismissed.

The Court now turns its attention to Odeh's harassment/hostile work environment claim. To establish a claim for hostile work environment, the plaintiff must prove the following elements: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on a protected interest, such as national origin; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take prompt remedial action.[104]

For conduct to be actionable as harassment, it must be "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[105]  "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so."[106] To determine whether a hostile work environment exists, courts consider the totality of

[102] Doc. 76-7, p. 8.

[103] Doc. 147-8, p. 8.  ("Q.  And so did you ask if you could go into any other position?  Was there any other position you were interested in with the City-Parish that you wanted to apply for?  A:  I did not ask.").

[104] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

[105] *Id.* (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, at 21(1993)).

[106] *Harvill v. Westward Communications LLC*, 433 F.3d 428, 434 (5th Cir. 2005)(citing *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999)(citation omitted)).

the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[107]  However, "Title VII ... is not a 'general civility code,' and 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"[108]

Construing the evidence in the light most favorable to Odeh, the Court finds that even if Odeh could satisfy the first two elements of his harassment claim, no reasonable juror could find that the alleged incidents of harassment were based on his national origin or that the two incidents were severe or pervasive.  Aside from his own subjective belief, Odeh has offered no competent summary judgment evidence to show that he was issued the written reprimand or that his prior position at DPW was being (and was ultimately) eliminated because of his national origin.  In contrast, the City-Parish has provided evidence that shows that he was issued the reprimand for failing to seek authorization to install additional security measures onto a co-worker's City-Parish computer, and that, as a result of a reorganization of DPW, Odeh's former position, as well as his supervisor's position, were being (and were ultimately) eliminated.    Turning to the severity or pervasiveness of the two incidents, it is undisputed that Odeh experienced no consequences when he received the written reprimand; therefore, no reasonable juror could find that the reprimand was objectively hostile or abusive.  Similarly, while Odeh may have subjectively perceived the elimination of his prior position at DPW to be offensive, no reasonable juror would have found it to be objectively hostile or abusive

---

[107] *Morgan*, 536 U.S. at 116 (quoting *Harris*, 510 U.S. 17, 23).
[108] *Lauderdale v. Texas Dept. of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007)(citation omitted).

based upon the legitimacy of the City-Parish's reorganization of DPW that resulted in the dissolution of the Special Assistant to the DPW Director position. Accordingly, the Court finds that Odeh has failed to carry his burden on summary judgment and his national origin harassment/hostile work environment claim shall be dismissed.

It appears to the Court that Odeh may also be alleging that the Defendant created a hostile work environment that resulted in his constructive discharge. In order to prevail, Odeh must show that his working conditions "were so intolerable that a reasonable employee would feel compelled to resign."[109] "The plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment."[110] Ultimately, the threshold for demonstrating constructive discharge is a high one. Here, Odeh relies on the same evidence as his harassment/hostile work environment claim to show that he was constructively discharged. Because Odeh has failed to offer evidence sufficient to preclude summary judgment on the hostile work environment claim, he cannot survive summary judgment on his claim that he was constructively discharged based on a hostile work environment.

D.    STATE WHISTLEBLOWER CLAIMS

Odeh has also asserted state law whistleblower claims against the Defendant. The Louisiana Whistleblower Statute, La. R.S. 23:967 provides in pertinent part:

> A.    An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.

---

[109] *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997).
[110] *Cavalier v. Clearlake Rehabilitation Hosp., Inc.*, 306 Fed.Appx. 104, 107 (5th Cir. Jan. 7, 2009).

(2)  Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
(3)  Objects to or refuses to participate in an employment act or practice that is in violation of law.

B.  An employee may commence a civil action in a district court where the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section.[111]

The Whistleblower Statute defines reprisal as "firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of [La. R.S. 23:967]."[112]

The Louisiana Whistleblower Statute targets serious employer conduct that violates state law.[113]  "La. R.S. 23:967 protects employees against reprisal from employers for reporting or refusing to participate in illegal work practices."[114]  "While the Louisiana Supreme Court has not yet interpreted this statute, there is consensus that a plaintiff is required to prove the employer committed an actual violation of state law, not just a good faith belief that a violation has occurred."[115]

To meet his burden, a plaintiff under Louisiana's Whistleblower Statute must show that (1) the defendant violated state law through a prohibited act or practice; (2) he informed the defendant of the violation; (3) he refused to participate in the prohibited practice or threatened to disclose the practice; and (4) his employer took reprisal against him as a result of his refusal or threat.[116]

---

[111] La. R.S. 23:967(A)-(B).
[112] La. R.S. 23:967(C)(1).
[113] *Puig v. Greater New Orleans Expressway Commission*, 00-924 (La.App. 5 Cir. 10/31/00); 772 So.2d 842, 845.
[114] *Ricalde v. Evonik Stockhausen, LLC*, 16-178 (La.App. 5 Cir. 9/22/16); 202 So.3d 548, 553 (citing *Hale v. Touro Infirmary*, 04-0003 (La.App. 4 Cir. 11/3/04); 886 So.2d 1210, 1214).
[115] *Brown v. ICF International*, Civil Action No. 07-931, 2011 WL 5548962, at *9 (M.D.La. Nov. 15, 2011).
[116] *Id.* (citing *Hale*, 886 So.2d at 1216).

In this case, Odeh claims that he was constructively discharged, reassigned to the EMS Department, and given a written reprimand after reporting the following violations of state law to his supervisors: (1) the City-Parish paid $639,070 to a vendor which violated the EBRP purchasing rules and state public bid law (La. R.S. 38:2111); (2) the Department of Public Works' camera system was "failing because of sabotage, neglect, and a lack of maintenance," as part of a scheme to aid and abet in the theft of equipment from a DPW South Maintenance Lot (La. R.S. 14:59 (criminal mischief); La. R.S. 14:24 (aiding and abetting); and/or La. R.S. 14:26 (criminal conspiracy)); (3) the City-Parish was incurring monthly charges of $44,701 for phone lines and hardware circuits that did not have a corresponding physical address; and (4) the City-Parish was billed by Verizon for 205 numbers that did not exist (violating La. R.S. 14:67 (theft); La. R.S. 14:134 (malfeasance in office), and La. Const. art. 14 § 7.[117]

1.      Whistleblower Claim—Violations of Public Bid Law[118]

In the *Pre-Trial Order*, Odeh alleges for the first time that the City-Parish violated two provisions of the state public bid laws by paying $639,070 to a vendor. La. R.S. 38:2212 provides in pertinent part as follows:

> All public work exceeding the contract limit as defined in this Section, including labor and materials, to be done by a public entity shall be advertised and let by contract to the lowest responsible and responsive bidder who bid according to the bidding documents as advertised, and no such public work shall be done except as providing in this Part.[119]

---

[117] Doc. 124, pp. 1-2. Odeh erroneously contends that La. Const. art. 14 § 7 pertains to unlawful use of public funds for a private purpose. Doc. 124, p. 2. It does not. This constitutional provision pertains to legislative sessions.

[118] The Court agrees with the City-Parish's argument that because Odeh asserted for the first time in his Opposition that the City-Parish "violated the anti-retaliation statute that applies to Louisiana government employees," such an argument is untimely and will not be considered by the Court. Doc. 151, p. 9 (La. R.S. § 42:1102, La. R.S. 42:1169. Odeh may not expand his pleadings at this late stage in the litigation.

[119] La. R.S. 38:2212(A)(1)(a).

La. R.S. 38:2212.1 provides in pertinent part as follows:

All purchases of any materials or supplies exceeding the sum of thirty thousand dollars to be paid out of public funds shall be advertised and let by contract to the lowest responsible bidder who has bid according to the specifications as advertised, and no such purchase shall be made except as providing in this Part.[120]

Odeh argues that he reported the public bid law violation to DPW Director, William Daniel ("Daniel"), in a report that he prepared and delivered to Daniel by hand.[121] However, the Court finds that the evidence Odeh cites does not show that he delivered any report or reported any violation of the state's public bid law to Daniel. On the other hand, the undisputed evidence shows that Daniel had asked Odeh to find out how much money the City-Parish had paid Intergraph Corporation.[122] Odeh contends that an unauthenticated six page report dated November 1, 2011 with the subject line "INTERGRAPH Contract with the City of Baton Rouge" consists of alleged violations of state public bid law committed by the Department of Information Services.[123] The Court finds that the report provides no such information. Rather, the report provides detailed information about the payments that the City-Parish had made to Intergraph Corporation as requested by Daniel.[124] At no point in the report is the Department of Information Services' name even mentioned or does the report suggest that the Department or the City-Parish had circumvented the state's public bid law. Overall, the evidence fails to show that Odeh reported any alleged violation of public bid law to his employer, or that

---

[120] La. R.S. 38:2212.1(A)(1)(a).
[121] Doc. 151-3, pp. 1-6.
[122] Doc. 151-3, p. 180 (Deposition of Daniel: "Q. Did you ask [Odeh] to perform analysis on the payment that was issued to Intergraph? A. I asked him to find out how much money we had paid to Intergraph.").
[123] Doc. 151-3, pp. 1-6.
[124] Doc. 151-3, p. 180.

the City-Parish, through the Department of Information Services, had actually violated the state's public bid law.[125]

To the extent that Odeh argues in his *Opposition* that "$639,070.00 had been paid to a vendor by circumventing 'public bid laws' by the Department of Information Services," it is well established that argument alone is not competent summary judgment evidence.[126] Moreover, even if Odeh had apprised his employer of the violation, he has failed to offer any evidence showing that an actual public bid law violation occurred.

Based on the foregoing, the Court finds that Odeh has failed to raise a genuine issue of material fact as to whether the City-Parish actually violated Louisiana's bid law and whether Odeh actually reported any alleged violation of Louisiana's bid law to the Defendant. Accordingly, Odeh's whistleblower claim premised on the City-Parish's alleged violation of the state's public bid law must be dismissed.

     2.     Whistleblower Claim—DPW's Surveillance Camera System

Odeh claims that in May of 2012, he "discovered and reported" to his supervisor David Guillory and DPW Director Daniel, violations of La. R.S. 14:59, 'criminal mischief';[127] La. R.S. 14:24, 'aiding and abetting';[128] and/or La. R.S. 14:26, 'criminal

---

[125] If any wrongdoing were to be gleaned from the report, it would potentially be attributed to the contractor for possibly overbilling the City-Parish.

[126] Odeh argues, without citing to any evidence, that "$639,070 had been paid to a vendor by circumventing 'public bid laws' by the Department of Information Services. i. The purchases are more than $30,000; ii. The Purchases were not performed under State Contract; iii. The Purchases were not performed under competitive sealed bidding; iv. The Purchases were not performed under any emergency procurements; v. The Purchases were not performed under exceptions to the competitive sealed bidding requirement; vi. The Purchases were not performed as an item from a local vendor at the state bid price; and vii. The Purchases were not procured using Request For Proposals process." Doc. 151, p. 10.

[127] The Court presumes that the applicable part of Louisiana's criminal mischief statute that Odeh is relying on to support his claim is the intentional "[t]ampering with any property of another, without the consent of the owner, with the intent to interfere with the free enjoyment of any rights of anyone thereto, or with the intent to deprive anyone entitled thereto of the full use of the property." La. R.S. 14:59(A)(1).

[128] La. R.S. 14:24 provides that "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."

conspiracy', the sabotage and destruction of City-Parish property (DPW equipment lot surveillance cameras)[129] by City-Parish's employees in order to aid and abet in the theft of hundreds of dollars of equipment from a DPW South Maintenance Lot."[130]

The Court has reviewed the evidence, specifically Plaintiff's Exhibit 14, relied upon by Odeh to support his argument. Of the 82 pages comprising Plaintiff's Exhibit 14, twelve pages include emails that Guillory authored, received, and/or was copied on, [131] and ten of the pages include emails that were either sent directly to Daniel or that he was copied on.[132] In none of the emails, however, does Odeh apprise Guillory or Daniel of any criminal activity being taken, such as sabotage or theft, on the part of the City-Parish or the City-Parish's employees. To the extent Odeh argues that he also reported these alleged violations to Guillory and Daniel at City Parish Office meetings or in side conversations, Odeh has cited to no evidence that would support such contentions.[133] Additionally, the Louisiana Whistleblower Statute only covers serious violations committed by the employer, not the illegal acts of co-workers.[134] Therefore, even if the Court had found that Odeh had reported an actual violation of law to his supervisors,

---

[129] Under Louisiana law, "[c]riminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more such parties does an act in furtherance of the object of the agreement or combination." La. R.S. 14:26(A).

[130] Doc. 151, p. 11, n. 12. Within the body of his *Opposition* Odeh also states: "Who the alleged violations were reported to? David Guillory who was being groomed to take over as the Director of the department and William Daniel DPW-Director." Doc. 151, pp. 11-12.

[131] Doc. 151-3, pp. 64-66, 83-84, 100, 131, 137, 140, 142-144.

[132] Doc. 151-3, pp. 64-66, 83-84, 93, 100, 140, 142-143.

[133] The Court is under no obligation to search Odeh's exhibits to find such support. The Court is "not like a pig, hunting for truffles buried" in over 800 pages of exhibits. *Arlington Apartment Investors, L.L.C. v. Allied World Assur. Co. (U.S), Inc.*, 612 Fed.Appx. 237, 238 (5th Cir. 2015).

[134] *Goulas v. LaGreca*, 945 F.Supp.2d 693, 703 (E.D.La. 2013)(holding that employee who disclosed co-worker's use of illegal drugs on work premises to his employer did not have a claim under the Louisiana Whistleblower Statute).

which it does not, his claim would still fail because the alleged violations were committed by his co-workers (i.e., "someone (Public Employee) from the 'Information Services'").[135]

Based on the foregoing, the Court finds that Odeh has failed to raise a genuine issue of material fact as to whether he actually reported any violations of criminal state law (i.e., criminal mischief, aiding and abetting, criminal conspiracy) to the City-Parish. And yet, even if Odeh had reported these violations to his employer, he has offered no competent summary judgment evidence that shows the City-Parish committed an actual violation of law, which is his burden to bear.[136] In fact, Odeh himself states that some of the IP issues with the surveillance cameras "suggests" that someone with the Department of Information Services had tampered with the system, such that theft or other criminal activity would not be recorded.[137] However mere "suggestion" without more is insufficient to show that an actual violation of law has occurred.

The Court finds that Odeh has failed to come forward with any competent summary judgment evidence that would lead a reasonable juror to find that the City-Parish actually committed any of the criminal violations Odeh allegedly reported. Because Odeh cannot establish two of the essential elements of his whistleblower claim based on violations of state criminal law (i.e., La. R.S. 14:59; La. R.S. 14:24; La. R.S. 14:26) related to the

---

[135] Doc. 151, p. 13.
[136] Odeh cites to one exhibit in support of his position: Doc. 151-3, Pla. Exhibit-14 at pp. 41, 55, and 62. This exhibit and the referenced pages do not support the arguments Odeh purports they do. (Doc. 151, pp. 12-13). Further, to the extent Odeh relies upon on-line news articles (i.e., I-Team: Highway Robbery, 2/1/2014, WAFB 9 News) to show that he, Odeh, reported an actual violation of law, news articles are not proper summary judgment evidence. *Porter v. Shineski*, 650 F.Supp.2d 565, 567 (E.D.La. 2009) ("Newspaper articles, however, are not proper summary judgment evidence to prove the truth of the facts that they report because they are inadmissible hearsay." quoting *James v. Texas Collin Cty*, 535 F.3d 365, 374 (5th Cir. 2008)).
[137] Doc. 151, p. 12.

DPW's surveillance camera system, his whistleblower claim must be dismissed on this ground.[138]

3. Whistleblower Claim—Telephone Services and Billing[139]

Odeh argues that he reported "suspected theft of telephone and long-distance services."[140] Initially the Court must address the undisputed fact that Odeh's supervisor, Hobson, tasked him with reviewing the AT&T phone bills.[141] After conducting his analysis, Odeh informed Hobson that approximately $44,000 of each monthly payment could not be linked to City-Parish phone lines.[142] In response, Hobson reported the findings to the

---

[138] The Court is also persuaded by the City-Parish's argument that even if Odeh had reported an alleged violation of law, it would have fallen within the scope of his job duties and, therefore, would have precluded a valid claim under Louisiana's Whistleblower Statute. At least one Louisiana appellate court noted that the Louisiana Whistleblower Statute and the Louisiana Environmental Whistleblower Statute do not apply to employees reporting illicit behavior as part of their job duties. *See Matthews v. Military Dept. ex rel. State*, 2007-1337 (La. App. 1 Cir. 9/24/07)); 970 So.2d 1089, 1090. Here, Odeh had special assignments, including, "[o]verse[ing] and troubleshoot[ing] cameras at the major maintenance lots" and "download[ing] camera footage to assist with internal investigations." Doc. 153, p. 39. Therefore, any of Odeh's complaints related to these issues would have been required as part of his job duties. Accordingly, this limitation would bar Odeh's Louisiana Whistleblower claim because the record shows that he had a responsibility to oversee the proper operation of cameras in the maintenance lots and to download footage to assist in the City-Parish's internal investigations.

[139] Odeh also cites to email communications from February 24, 2014, involving Andrea George, Senior Auditor with the City-Parish, to support his claim. These three emails, however, do not suggest that Odeh reported any violation of state law or that the City-Parish actually violated any state law. Rather, these emails show that George was trying to assess the progress of the inventory of the phone lines and ask when Odeh would be available to meet. Odeh provided a date and time, but Hobson emailed stating that they the progress of the landline inventory was being handled by Guillot and Mary Prochaska of EMS. Doc. 151-4, pp. 3-4.

[140] Doc. 151, p. 16. Under Louisiana law, theft is "the misappropriation or taking of anything of value which belongs to another, either without consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential." La. R.S. 14:67(A). Odeh argues that La. R.S. 14:134 and La. Const. art. 14 § 7 are at issue on this claim. At no point does Odeh cite to evidence showing that he reported any violation of malfeasance to his employer, the City-Parish. La. R.S. 14:134 states: "Malfeasance in office is committed when any public officer or public employee shall [i]ntentionally refuse or fail to perform and duty lawfully required of him … [k]nowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him." As for Odeh's alleged reporting of a constitutional violation under La. Const. art. 14 § 7, the Court is unclear how this constitutional article is applicable in this case. La. Const. art. 14 § 7 states: "The legislature shall provide, by rule or otherwise, for a recess, during the 1975 and 1976 regular annual sessions, which shall be for at least eight calendar days immediately after the first fifteen calendared days of the session."

[141] Doc. 151-5, p. 61.

[142] Doc. 151-5, pp. 61-62.

finance department and based upon the evidence provided, the financial department took action to resolve the matter.[143] The Court finds that Odeh's whistleblower claim must fail for several reasons. To the extent that Odeh's actions amount to the reporting of theft, the irrevocable fact remains that this was part of his assigned job duties. At least one Louisiana Appellate Court has found that the Louisiana Whistleblower Act does not apply to employees who report illegal or illicit activity as part of their job duties.[144] The Court agrees. Odeh should not be able to avail himself of the protections of Louisiana's Whistleblower Statute, when his employer specifically tasked him with the responsibility of reporting any issues—legal or illegal—concerning the City-Parish's phone bills. Accordingly, the Court finds that Odeh's whistleblower claim arising out the telephone and long distance services must fail on this ground.

In the alternative, the Court finds that aside from Hobson, Odeh did not report any alleged issue with the telephone bills to anyone else.[145] Rather, the evidence shows that Odeh sent an email to an AT&T customer representative in which he explained that he, along with Hobson and Eva Kelley, needed assistance in resolving the unaccounted for telephone numbers for a City Parish Phone Directory.[146] The additional emails Odeh relies upon to show that he reported any violation of law to the City-Parish either do no

---

[143] Doc. 151-5, p. 62; Doc. 151-3, pp. 150-151.

[144] *Matthews*, 970 So.2d at 1090. The appellate court found that the "plaintiff was afforded no protection under [Louisiana's Whistleblower Statute] or 30:2027 for his reports relative to the State's potential liability for acquisition of the Gillis Long Hansen Disease Center insofar as the reports were required as part of his normal duties." *Id.*

[145] Odeh cites to unauthenticated transcription of telephone conversations with Daniel to support his position. Unauthenticated transcripts are not proper summary judgment evidence and shall not be considered by the Court. *See Garcia v. Gloor*, 618 F.2d 264, 272 (5th Cir. 1980)(unauthenticated transcript properly excluded under Fed.R.Evid. 901). *See also, Moore v. Hinds Cty. Bd. of Sup'rs.*, 2011 WL 5117101, *3 (S.D.Miss. Oct. 25, 2011) (finding that unauthenticated transcripts of telephone calls were not admissible evidence for summary judgment purposes).

[146] Doc. 151-3, p. 145. Odeh copied the email to Hobson, and also sent the email to Eva Kelley, Tommy Milazo, and Kay Ellzey.

originate from Odeh—he is simply copied on the emails—or they contain no information that would suggest that Odeh was reporting that the City-Parish had violated the law.[147] Hence, Odeh has failed to satisfy the first element necessary for his whistleblower claim.

As for the second element—showing the City-Parish committed theft or any other actual violation of law—Odeh offers no competent summary judgment evidence to satisfy his burden. Instead, he offers argument in which he claims that certain actions "suggest" that the City-Parish had engaged in criminal activity.[148] As previously discussed, Odeh cannot satisfy his burden on summary judgment relying solely on argument and mere speculation. For the foregoing reasons, the Court finds that Odeh's whistleblower claim premised on suspected theft of telephone and long-distance services must be dismissed.

## III.    CONCLUSION

For the foregoing reasons, the Court hereby grants the *Renewed Motion for Summary Judgment* filed on behalf of the Defendant, the City Parish of Baton Rouge/Parish of East Baton Rouge.[149]    Considering this Court's *Ruling*, the pending *Motions in Limine* are hereby denied as moot.[150]    Judgment shall be entered accordingly.

Signed in Baton Rouge, Louisiana, on August _____, 2017.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[147] Doc. 151-3, pp. 145-161; Doc. 151-4, pp. 3-4. In some instances, Odeh was not even a party to the communications.
[148] Doc. 151, p. 17. ("The finance department had contacted the EBRP – Police Department to allow the Communication District to use their online Investigative Software to Identify [sic] phone numbers at issue. This suggests that City-Parish funds were wasted.").
[149] Doc. 147.
[150] Doc. 119 and Doc. 120.